*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CLAYTON ANDREW BYERS,

        Defendant-Appellant.

UNPUBLISHED
July 23, 2020

No. 347212
Kent Circuit Court
LC No. 17-011231-FH

Before: BORRELLO, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of felony-firearm, MCL 750.227b(1); assaulting, resisting, or obstructing a police officer (resisting and obstructing), MCL 750.81d(1); and possession of a firearm under the influence, MCL 750.237(1)(a). The trial court sentenced defendant to 2 years' imprisonment for the felony-firearm conviction, a $750 fine for the resisting and obstructing conviction, and a $100 fine for his possession of a firearm under the influence conviction. We affirm.

This case arose from defendant's interaction with his next-door neighbor. Trisha Nickels testified at trial that she lived in a trailer right next to defendant's trailer. Nickels stated that she called 911 after defendant allegedly pointed two guns at her head during a conversation inside her home. According to Nickels, defendant appeared intoxicated during this incident. Nickels testified that at about 9:30 p.m., when defendant had gone home, she saw the police arrive at defendant's trailer. Nickels testified that she saw about four or five police officers in uniform surround defendant's home with their guns drawn.

Nickels stated that this occurred while it was dark outside, but the police officers had lights. Nickels testified that she could hear the police officers announce that they were police officers from inside her home. Nickels testified that it took defendant a minute to come out onto his porch, and the police officers tried to get him to come off the porch. Nickels stated that defendant eventually came off the porch and was taken into custody by police officers, but it took up to five minutes for defendant to begin cooperating with the police officers.

Deputy Brandon Marz, a road patrol deputy with the Kent County Sheriff's Office, testified that he was dispatched at about 9:15 p.m. to defendant's home on a call regarding the brandishing of weapons. Deputy Marz stated that defendant's neighbor reported that defendant "arrived at her address and pointed two firearms in her face." Deputy Marz testified that he was the first police officer to arrive on the scene in full uniform and a marked police cruiser. Deputy Marz stated that because of safety concerns he staged in an area out of sight of defendant's home to wait for other officers to arrive and turned off all the lights on his vehicle so that no one would see him.

Deputy Marz testified that a second deputy, Deputy John White, arrived on the scene, but they continued to wait for additional backup until dispatch told them that defendant had gone back to the victim's trailer and was attempting to gain access. Deputy Marz stated that when they heard that the situation had escalated, he and Deputy White decided to approach the trailers on foot without backup. Deputy Marz testified that he could not see anyone at the victim's address, but he saw defendant standing on the porch at his own residence and determined that defendant matched the description of the suspect provided by dispatch. Deputy Marz stated that it was dark outside, but he could see defendant clearly because there were streetlights near defendant's trailer and some motion activated lights on a few of the nearby trailers.

Defendant testified that he was sitting at home and could see lights moving outside. However, defendant stated that it was dark outside and there was only one streetlight across the street from his trailer, so he could not see what was causing the moving lights. Defendant testified that he walked onto his porch to check out the situation. Defendant stated that, when he walked onto the porch, someone shone a flashlight in his face and he did not know what was going on. Defendant testified that he could not hear anything at first, and he did not know who was outside his trailer.

According to Deputy Marz, the incident progressed as follows:

He turned towards us. We ordered him at that point to come down from the deck. He stood there. He did a motion with his right hand, swept his coat to the side revealing a firearm, placed his hand on the handgrip or the pistol grip of the firearm, and then brushed it aside. So he left his hands down at his side while we gave him verbal commands to come down off of the porch. We were identified, obviously in full uniform, identified ourselves as deputies with the Kent County Sheriff's Office, and he refused to come off the porch at that time.

* * *

I believe at one point I told him to drop the gun because I believed he was going to pick it up out of the holster. We gave him loud verbal commands to slowly step down off the porch. And at one point he indicated that he was not going anywhere.

Deputy Marz further testified that he asked defendant to come off his porch 10 or more times in a clear and concise manner that could be heard by defendant, the other officer, and onlookers inside the nearby trailers. Deputy White's account of the incident at trial matched Deputy Marz's testimony, and Deputy White confirmed that defendant would not cooperate with the officers' verbal commands to put his hands up and come off the porch. Defendant testified that he "heard

someone yelling something about getting down, and [he] probably said [he was] not going anywhere because [he] did not know who it was."

Deputy Marz stated that "from the time we got there to when [defendant] was taken into custody was approximately a minute, minute and-a-half." According to Deputy White, it took defendant about five minutes to come off the porch from the time the officers first saw him. Deputy Marz testified that when two additional deputies arrived on the scene, defendant elected to comply with their commands and stepped off the porch. Defendant testified that he did not know that there were police officers outside his home until he saw that one of the people in his driveway was wearing a badge. Defendant stated that as soon as he realized that the people outside his home were police officers, he stepped down from his porch and complied with their commands. According to defendant, it took him about a minute to recognize that they were police officers.

Deputy Marz stated that he ordered defendant to get down on his knees, and defendant complied. Deputy Marz testified that one of the officers handcuffed defendant and searched him for weapons. Deputy Marz stated that two firearms were recovered from defendant's person. Defendant admitted that he possessed a firearm under the influence of alcohol and was guilty on that count. Defendant was charged with felonious assault with a dangerous weapon, MCL 750.82; carrying a concealed weapon, MCL 750.227; and resisting and obstructing in relation to the incident.

At the preliminary examination hearing, the prosecutor dropped the carrying a concealed weapon charge and added the charges of possession of a firearm under the influence and a felony-firearm on the basis of defendant's underlying felonious assault charge. The district court determined that there was probable cause to bind over defendant on the amended charges of felonious assault, felony-firearm with the underlying felony being felonious assault, resisting and obstructing, and possession of a firearm under the influence. At defendant's jury trial, before jury selection began, the trial court granted the prosecutor's proposed amendment to the information which added resisting and obstructing as an underlying felony for defendant's felony-firearm charge. Defense counsel did not object to the amendment. Ultimately, the jury found defendant not guilty of felonious assault but convicted him of felony-firearm, resisting and obstructing, and possession of a firearm under the influence.

Defendant argues that there was not sufficient evidence to support his resisting and obstructing conviction. We disagree.

This Court reviews de novo a claim of insufficient evidence. *People v Jones*, 297 Mich App 80, 86; 823 NW2d 312 (2012). "The evidence is viewed in a light most favorable to the prosecution to determine whether a rational jury could find that each element of the crime was proved beyond a reasonable doubt." *Id*. In making the determination, this Court must "not interfere with the fact-finder's role of deciding the credibility of the witnesses." *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). Circumstantial evidence and the reasonable inferences that arise therefrom may be properly relied upon as satisfactory proof of each element of a crime. *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018).

Under MCL 750.81d, an individual is guilty of resisting or obstructing if the individual "assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual

-3-

knows or has reason to know is performing his or her duties." MCL 750.81d(1). Obstruction is defined as "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a). The duration of a defendant's resistance or noncompliance does not matter because "even the briefest moments" of resistance or noncompliance can give rise to a claim under MCL 750.81d. *People v Morris*, 314 Mich App 399, 414-415; 886 NW2d 910 (2016).

The prosecutor must also establish that the officers' actions were lawful as an element of resisting and obstructing. *Id*. at 413. An arrest is lawful when the arresting officer has probable cause that a felony "occurred outside the officer's presence and that the individual in question committed the offense." *People v Vandenberg*, 307 Mich App 57, 69; 589 NW2d 229 (2014). "Probable cause is found when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable person to believe that an offense had been or is being committed." *People v Chapo*, 283 Mich App 360, 367; 770 NW2d 68 (2009) (quotation marks and citation omitted).

In this case, there was sufficient evidence introduced at trial to allow the jury to find that defendant knowingly failed to comply with the police officers' lawful commands to come down from his porch. See MCL 750.81d(1), (7)(a); *Jones*, 297 Mich App at 86. First, Deputy Marz testified that the police officers identified themselves as deputies with the Sheriff's Office in a voice loud enough to allow defendant and people in nearby trailers to hear them. In fact, Nickels stated that she could hear the officers announce their presence, identify themselves as police officers, and give defendant commands to come off his porch from inside her home. Even defendant admitted that he could hear people yelling from his porch. Therefore, it was reasonable for a jury to conclude that defendant heard the officers identifying themselves. See *Jones*, 297 Mich App at 86.

Additionally, Nickels testified that, although it was dark outside, she could see police officers in uniform surrounding defendant's home through her living room window. Although Deputy Marz testified that he initially concealed himself from defendant's view, he also testified that he could see defendant clearly in the light from nearby trailers and streetlights as he approached defendant's trailer on foot. Defendant confirmed that he could see people with lights moving outside his home, which is why he went out onto his porch in the first place. Therefore, despite defendant's claim that he did not know that the people he saw with the flashlights outside his home were police officers, a rational juror could have found that defendant saw the police officers in uniform and, on the basis of their uniforms, had reason to know that they were police officers. See MCL 750.81d(1), (7)(a); *Jones*, 297 Mich App at 86. Consequently, there was sufficient evidence to allow a reasonable jury to determine that defendant knew or had reason to know that there were police officers outside his home because the officers were in uniform and verbally identified themselves as police officers, despite defendant's claims to the contrary. See MCL 750.81d(1), (7)(a); *Jones*, 297 Mich App at 86.

Next, there was sufficient evidence to support a finding that the police officers' commands that defendant put his hands up and come down from his porch were lawful. See *Morris*, 314 Mich App at 413; *Vandenberg*, 307 Mich App at 69; *Jones*, 297 Mich App at 86. Deputy Marz testified that he responded to the incident when dispatch informed him that it had received a call regarding the brandishing of weapons. Deputy Marz stated that the call came from defendant's neighbor

who reported that defendant pointed two firearms at her head while inside her home. On the basis of this information from dispatch, Deputy Marz and the other responding officers had probable cause to reasonably believe that a crime had been committed by the suspect. See *Chapo*, 283 Mich App at 367. Moreover, Deputy Marz testified that defendant matched the description of the suspect provided by dispatch, giving him probable cause that defendant was the one who committed the crime. See *Vandenberg*, 307 Mich App at 69; *Chapo*, 283 Mich App at 367. Therefore, Deputy Marz's testimony provided a sufficient basis for the jury to reasonably determine that the police officers were acting lawfully, and with probable cause, by attempting to detain defendant. See *Morris*, 314 Mich App at 413; *Vandenberg*, 307 Mich App at 69; *Jones*, 297 Mich App at 86.

Finally, there was sufficient evidence that defendant resisted or obstructed the police officers' lawful commands. See MCL 750.81d(7)(a); *Morris*, 314 Mich App at 414-415. Deputy Marz testified that the police officers commanded defendant to come down from his porch more than 10 times in a manner loud enough for defendant to hear, but defendant did not comply for over a minute and told the officers that he was not going anywhere. Deputy White testified that defendant would not cooperate with their verbal commands to put his hands up and come off the porch for about five minutes after the officers first saw him. Similarly, Nickels testified that it took defendant up to five minutes to begin cooperating with the police officers.

Despite claiming that he did not know what was going on, defendant admitted that he "heard someone yelling something about getting down, and [he] probably said [he was] not going anywhere." Moreover, although defendant testified that he complied with the officers' commands as soon as he realized that they were police officers, defendant also admitted that it took about one minute to recognize that the people outside his home were police officers. Because noncompliance can occur in "even the briefest of moments," the testimony at trial provided the jury with sufficient evidence to support a conclusion that defendant failed to comply with the police officers' lawful commands. See *Morris*, 314 Mich App at 414-415; *Jones*, 297 Mich App at 86. Additionally, to the extent that there was any conflicting testimony, this Court must not interfere with the jury's credibility determinations. See *Solloway*, 316 Mich App at 180.

Defendant also argues that the trial court erred by allowing the prosecutor to amend defendant's information to include resisting and obstructing as an underlying offense for the felony-firearm charge and improperly instructed the jury regarding defendant's felony-firearm charge. We disagree.

"To be preserved for appellate review, an issue must be raised before and addressed by the trial court." *People v Wiley*, 324 Mich App 130, 150; 919 NW2d 802 (2018). Similarly, a defendant must raise a timely objection to a jury instruction in order to preserve a challenge to that instruction for appellate review. *People v Mette*, 243 Mich App 318, 324; 621 NW2d 713 (2000). In this case, defendant did not object to the amendment of the information after the trial court specifically asked defense counsel if he had any objections, nor did defendant raise an objection to any of the jury instructions. Therefore, defendant failed to properly preserve his challenges to the amended information and to the trial court's jury instructions. See *Mette*, 243 Mich App 318, 324; *Wiley*, 324 Mich App at 150.

Generally, "[a] trial court's decision to grant or deny a motion to amend an information is reviewed for an abuse of discretion," *People v McGee*, 258 Mich App 683, 686-687; 672 NW2d

191 (2003), and claims of instructional error are reviewed de novo, *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). However, because defendant failed to preserve his arguments on appeal, this Court is limited to plain error review. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"The court before, during, or after trial may permit the prosecutor to amend the information . . . unless the proposed amendment would unfairly surprise or prejudice the defendant." MCR 6.112(H). A defendant is not unfairly surprised or prejudiced when the elements of the offense that the prosecutor moves to add are supported by testimony from the preliminary examination and the amended information does "not require a different defense or evidence." *McGee*, 258 Mich App at 691. Felony-firearm occurs when a person "carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony." MCL 750.227b(1).

In this case, Deputy Marz provided the same basic testimony at the preliminary examination as he provided at trial regarding his interactions with defendant on the night of the incident, including that defendant revealed a firearm under his jacket while not complying with the police officers' commands. Therefore, defendant was not unfairly surprised by the amendment to the information because Deputy Marz's preliminary examination testimony supported a finding that defendant was carrying a firearm at the time he allegedly committed the underlying resisting and obstructing felony as required for a felony-firearm charge. See MCL 750.227b(1); *McGee*, 258 Mich App at 691.

Moreover, defendant was charged with the underlying resisting and obstructing felony from the time the complaint was filed and had plenty of time to create a defense strategy for that charge. Therefore, defendant was not unfairly prejudiced by the amendment to his information because using the resisting and obstructing charge as the underlying felony for defendant's felony-firearm charge did not require defendant to come up with any additional defenses. See *McGee*, 258 Mich App at 691. Because the amended information did not unfairly surprise or prejudice defendant, the trial court did not plainly err by allowing the prosecutor to amend the information to include resisting and obstructing as an underlying felony for defendant's felony-firearm charge. See MCR 6.112(H); *Carines*, 460 Mich at 763.

Defendant also argues that the trial court improperly instructed the jury regarding the felony-firearm charge because it failed to inform the jury of the unanimity requirement as to the predicate felony for defendant's felony-firearm charge. However, defendant waived his challenge to the trial court's jury instructions. See *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012). A defendant waives a challenge to his or her jury instructions when defense counsel clearly expresses satisfaction with the jury instructions given by the trial court. *Id*. In this case, defense counsel expressed satisfaction with the jury instructions by responding, "No, your Honor," when the trial court asked him if he had an objection to the jury instructions. Therefore, defendant waived appellate review regarding his challenge to the jury instructions. See *id*.

Affirmed.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Deborah A. Servitto