*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ASHANTA LATRICE PEOPLES,

        Defendant-Appellant.

UNPUBLISHED
January 4, 2024

No. 361191
Monroe Circuit Court
LC No. 2021-246345-FH

Before: GLEICHER, C.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Defendant Ashanta Latrice Peoples appeals as of right her jury trial conviction of assaulting, resisting, and obstructing a police officer, MCL 750.81d(1). The trial court sentenced Peoples to 30 days in jail, and two years' probation. We affirm.

## I. BACKGROUND

This case arises out of a traffic stop that resulted in charges against Peoples for OWI and resisting and obstructing in two separate dockets. In July 2021, Deputy Skyler Riffle of the Monroe County Sheriff's Office observed Peoples's vehicle parked on the side of the road, but partially in the right lane of traffic. Pulling up to her vehicle, Riffle noticed vomit on the side of the road, and Peoples "bent over at the side of the vehicle[,]" before she got back into the driver's seat of the vehicle. As he approached, Riffle smelled "intoxicants." Peoples told him she was "having some flu-like symptoms" and admitted she was vomiting and dehydrated. She claimed she was traveling to Promedica Monroe Hospital (the hospital). After Riffle made multiple requests, Peoples exited her car. Riffle conducted three field sobriety tests, all of which Peoples failed. Peoples agreed to undergo blood testing for alcohol. Riffle informed Peoples she was under arrest for operation of a motor vehicle while under the influence (OWI) , and called Sergeant David Raymond to bring a testing kit to the hospital.

After taking Peoples to the hospital, and completing a blood draw, Riffle and Raymond told Peoples to throw away a disposable cup the hospital gave her for water. She refused, and began stuffing the cup into her mouth. (Raymond estimated the cup was about five inches tall.)

Peoples began to put the entire cup in her mouth, and began to drool. The officers commanded her to spit out the cup.

When Peoples did not follow their commands, the interaction became physical. First, the officers held her upper arms, while still instructing her to spit out the cup. Later, the officers used their bodies to pin Peoples to the hospital bed, before trying to remove the cup from her mouth. Peoples began "thrashing, pulling left and right[,]" flailing her legs, and violently moving her entire body.

The officers testified that because of Peoples's continued noncompliance, they performed two "compliance maneuvers,"[1] neither of which was effective, while continuously ordering Peoples to spit out the cup. The officers' testimony differs regarding whether Peoples began intentionally kicking before or after the compliance maneuvers were performed, but both testified she successfully kicked Raymond. This kick formed the basis for the resisting and obstructing charge.

The blood test results indicated Peoples had "[0].207 grams of alcohol per 100 milliliters of blood in her system." This was well in excess of the legal limit for blood alcohol content while driving.

The prosecution charged Peoples in two separate cases. In the case underlying this appeal, the prosecution charged a single count of assaulting, resisting, or obstructing a police officer. In a separate case, the prosecution charged Peoples with OWI under MCL 257.625(1)(c). Peoples went to trial first on the resisting and obstructing charge.

During voir dire, the trial court provided preliminary jury instructions, including warning jurors of the need for them to remain impartial, and warning them about the nature of the questions during voir dire. When the trial court asked if any of the jurors knew Peoples, the lawyers, or the witnesses in this case, one juror raised his hand, and had the following exchange with the trial court:

> *The Court*: Sir, you also had your hand up.
>
> *Juror*: Yes, Your Honor. I worked with all the deputies and the individual myself.
>
> *The Court*: Okay. So, when you say you worked with all the deputies, are you a police officer?
>
> *Juror*: I used to work across the street at the jail, Your Honor.

---

[1] Riffle performed a wrist lock. Later, Riffle and Raymond performed a "mandibular angle," a maneuver using the pressure point on the jaw to gain control of an individual. Both tactics were unsuccessful.

*The Court*: Oh, you were a [corrections officer]?

*Juror*: Yes, Your Honor.

*The Court*: Okay, and anything about that relationship would cause you to be less than fair and impartial?

*Juror*: I do believe so, yes.

*The Court*: Okay. Even if I told you you have to judge everybody's testimony the same, you wouldn't be able to do that?

*Juror*: Yes, I would be able to.

*The Court*: All right. Are you familiar with the defendant in this case?

*Juror*: I am.

Peoples's attorney moved to excuse the prospective juror for cause, and the court dismissed the juror. After questioning other jurors, the trial court provided the pattern preliminary jury instructions, including instructing the jury that Peoples was presumed innocent, and that the prosecution had the burden of proving each element of the crime beyond a reasonable doubt. The trial court provided the elements of the charge, warning the jurors they could only base their verdict on the evidence presented, and provided examples of properly-considered evidence, consistent with the model jury instructions. The trial court again warned the jurors they could "not let bias, prejudice or public opinion influence [their] decision[,]" and encouraged them to carefully consider their personal biases when deliberating.

At trial, Riffle and Raymond testified regarding the facts underlying the case, and both officers testified that Peoples's kick was distinguishable from when she was flailing. Riffle also testified about the circumstances of Peoples's arrest for OWI, including arriving after Peoples's vehicle was already pulled over, smelling intoxicants from the vehicle, and conducting field sobriety tests.

After witness testimony and closing arguments, the trial court reminded the jury they were required to presume Peoples was innocent unless they were satisfied beyond a reasonable doubt the prosecution proved each element of the crime with which she was charged. The trial court also reminded the jury they could only consider properly admitted evidence, such as "the sworn testimony of the witnesses, any exhibits that [it admitted] into evidence, and anything else [it told them] to consider [as] evidence[,]" and provided examples of some things that were not evidence, such as "[t]he fact that the defendant is charged with a crime and is on trial[,]" the statements, questions, and arguments of the lawyers, and the trial court's "comments, rulings, questions[,] and instructions . . . ." The trial court lastly noted "defendant's intent may be proved by what she said, what she did, how she did it or by any other facts or circumstance in evidence." The jury found Peoples guilty as charged.

At sentencing, People's attorney argued Peoples had three minor children who lived with her, had "a minimal criminal record[,]" and the guidelines range was low: 0 to 11 months in jail.

Peoples took issue with the probation aspect of her sentence, requesting she not have to "do reporting or any of that[,]" because the pretrial phase of her case had continued for a year and she felt she had "been very compliant" with the trial court. The trial court noted, however, that Peoples had a prior conviction of "jostling of a police officer[,]" and, while Peoples thought she was being cooperative, her "attitudes toward the staff and almost everybody in [the] building ha[d] been one of contempt." The trial court acknowledged that Peoples is a mother of three, but she also had those children at the time of her offense conduct. The trial court sentenced Peoples to 30 days in jail and two years' probation.

After Peoples appealed by right, she moved to remand this case for a *Ginther*[2] hearing, reciting her issues on appeal, but this Court denied the motion without prejudice. *People v Peoples*, unpublished order of the Court of Appeals, entered September 12, 2022 (Docket No. 361191).

## II. OTHER ACTS

Peoples argues the trial court erred by admitting evidence of her OWI charge and underlying conduct, because (1) the prosecution failed to provide adequate notice under MRE 404(b); (2) the evidence was irrelevant to the charge in this case; and (3) even if the evidence was relevant, its risk of unfair prejudice substantially outweighed its probative value. She further argues that her attorney's decision not to object to the admission of this evidence was ineffective assistance of counsel. We disagree because the evidence at issue did not implicate 404(b).

Peoples's ineffective-assistance-of-counsel claim is preserved, but her claims regarding the underlying evidentiary error are not. This results in two standards of review for overlapping issues.[3] Both standards require us to consider whether the error or deficient performance of

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1). Peoples did not object to the admission of the evidence concerning her OWI charge, and, therefore, this issue is unpreserved. We review unpreserved errors for plain error affecting substantial rights. *People v Davis*, 509 Mich 52, 67-68; 983 NW2d 325 (2022). A plain error affects substantial rights if it "affected the outcome of the lower court proceedings[,]" and "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks and citation omitted).

Peoples, however, preserved her ineffective-assistance-of-counsel claim "by filing in this Court a motion for remand to the trial court for a *Ginther* hearing." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020) (footnote and citation omitted). "A defendant's ineffective assistance of counsel claim is a mixed question of fact and constitutional law." *People v Shaw*, 315 Mich App 668, 671; 892 NW2d 15 (2016) (quotation marks and citation omitted). "When

-4-

counsel affected the outcome. See *People v Davis*, 509 Mich 52, 67-68; 983 NW2d 325 (2022). See also *Strickland v Washington*, 466 US 668, 693-694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Because we conclude that the evidence was admissible, we resolve both issues on the basis that there was no error.

Regarding the evidentiary claim, Peoples first argues that the prosecution failed to provide the required 14-day notice of its intent to use evidence of her other crimes or wrongful acts, as required under MRE 404(b)(2). We agree. At the time of Peoples's trial, MRE 404(b)(1) provided:[4]

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In criminal cases, former MRE 404(b)(2) required the prosecution to provide written notice at least 14 days in advance of trial of its intent to introduce other acts evidence and its rationale for its admissibility. See MRE 404(b)(2), effective January 1, 2018, 501 Mich (also permitting oral notice on the record later if the court excuses pretrial notice on good cause shown).

The prosecution introduced evidence of Peoples's arrest on suspicion of OWI to prove one of the elements of assaulting, resisting, and obstructing a police officer:

> To convict a defendant under MCL 750.81d(1), the prosecution must prove: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." [*People v Morris*, 314 Mich App 399, 413-414; 886 NW2d 910 (2016) (citation omitted).]

To prove this charge, "the prosecution must establish that the officers' actions were lawful as an element of resisting or obstructing a police officer under MCL 750.81d." *People v Quinn*, 305 Mich App 484, 492; 853 NW2d 383 (2014) (quotation marks and citation omitted). See also MCL 750.81d(7)(a) (" 'Obstruct' includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.").

---

reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law." *Id*. at 671-672.

[4] The Michigan Rules of Evidence were recently amended, effective January 1, 2024. What was previously MRE 404(b)(1) is now found in MRE 404(b)(1) and (2). Further citation to the Michigan Rules of Evidence in this opinion will refer to the previous version of the rules in effect at the time of Peoples's trial.

The prosecution introduced evidence of Peoples's earlier OWI arrest to prove she was legally in the officers' custody at the time, and, therefore, the officers were performing their duties and making lawful commands, an element of the charge. "MRE 404(b) only applies to evidence of crimes, wrongs, or acts 'other' than the 'conduct at issue in the case' that risks an impermissible character-to-conduct inference." *People v Jackson*, 498 Mich 246, 262; 869 NW2d 253 (2015). Although there is no "res gestae exception" to MRE 404(b), "acts comprised by or directly evidencing the 'conduct at issue' are not subject to scrutiny under MRE 404(b)." *Id*. at 262, 266. See also *People v Spaulding*, 332 Mich App 638, 650; 957 NW2d 843 (2020); MRE 404(b). Here, the circumstances of Peoples's arrest directly evidenced the conduct at issue (resisting and obstructing) because it was evidence of whether the officers were making lawful commands or performing their duties and by extension whether Peoples was obstructing when she disobeyed those commands or attempted to kick the officers in the hospital. Although Michigan does not recognize an intrinsic evidence or res gestae evidence exception to MRE 404(b), here, the underlying arrest is direct evidence of the conduct at issue, so MRE 404(b) is not implicated. See *Jackson*, 498 Mich at 262; *People v Mardlin*, 487 Mich 609, 616 n 10; 790 NW2d 607 (2010). The prosecution therefore did not provide notice under MRE 404(b)(2) because MRE 404(b) was not implicated.

Peoples also argues her OWI arrest was not relevant to this case, because it was completely separate from the incident in the hospital. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. And generally all relevant evidence is admissible. See MRE 402. As noted, Peoples's OWI arrest was presented as evidence of the officers performing their lawful duties, and of the lawfulness of their commands at the hospital. "It is well established in Michigan, as well as in most jurisdictions, that *all* elements of a criminal offense are 'in issue' when a defendant enters a plea of not guilty." *People v Mills*, 450 Mich 61, 69; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995) (emphasis in original). "The elements of the offense are always at issue. Thus, the prosecution may offer relevant evidence, subject to MRE 403, on every element." *Id*. at 70.

The remaining question, therefore, concerns whether the evidence was admissible under MRE 403, which stated: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Regarding the risk of unfair prejudice, Peoples argues there were other, less prejudicial ways for the prosecution to prove the officers were performing their lawful duties and making lawful commands, but this is not the test for MRE 403. Overlooking the fact that Peoples does not propose alternative proofs,[5] the inquiry under MRE 403 is whether the risk of unfair prejudice

---

[5] Peoples arguably has abandoned this argument by failing to develop it. We nonetheless briefly address the issue. Peoples argues that there were alternative methods of proof, but does not propose examples of those alternatives. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Konopka*, 309 Mich App 345, 366; 869 NW2d 651 (2015) (quotation marks and citation omitted). "An appellant's

-6-

substantially outweighs the proposed evidence's probative value. The question is not whether the proposed evidence is the least prejudicial. The probative value of the evidence was high. As stated, it was direct evidence of the conduct at issue. And part of Peoples's defense was that her arrest was not lawful, a claim that this evidence directly rebuts. We also conclude that although there was some risk of unfair prejudice related to the OWI arrest, in the context of a resisting and obstructing charge, that risk is comparatively low, since almost every resisting and obstructing offense involves some form of prior police contact.

Peoples further argues the evidence of her OWI arrest violated MRE 403 because of its risk of confusing the issues or misleading the jury, and also risked having the jury decide the case on the basis of their bias that she was intoxicated or a bad person. We conclude that the trial court's instructions mitigated such risk. "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). The trial court instructed the jury that it was not to make decisions on the basis of any bias, and they were to consider Peoples innocent until the prosecution proved she was guilty beyond a reasonable doubt. The trial court also accurately instructed the jury on the elements of the offense. Any potential prejudice the evidence of Peoples's earlier OWI arrest may have had was properly curbed by the trial court's instructions, and the probative value of affirmatively proving the elements of the charged crime outweighs the minimal prejudice remaining after the instructions. Therefore, the evidence was properly admitted.

Peoples next argues she suffered ineffective assistance of counsel because her attorney failed to object to the admission of the evidence of her OWI arrest. We disagree.

> In order to establish the right to a new trial premised on ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [*Abcumby-Blair*, 335 Mich App at 228.]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citations omitted). Because there was no error in admitting the evidence, there is no reasonable probability, if Peoples's attorney had objected, the outcome of the case would have been different. Furthermore, because the evidence was properly admitted, there is no evidence that Peoples's attorney's performance "fell below an objective standard of reasonableness[,]" because "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

### III. JOINDER

---

failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Id*. (quotation marks and citation omitted).

Peoples argues she was denied a fair trial because the prosecution severed the cases involving her OWI and assaulting, resisting, and obstructing a police officer, rendering her unable to testify on her behalf in this case for fear of incriminating herself in the then pending OWI case. She further argues her attorney was ineffective because he failed to move for joinder. We disagree.

Joinder of charges is addressed by MCR 6.120, which states:

> (A) Charging Joinder. The prosecuting attorney may file an information or indictment that charges a single defendant with any two or more offenses. Each offense must be stated in a separate count. Two or more informations or indictments against a single defendant may be consolidated for a single trial.
>
> (B) Postcharging Permissive Joinder or Severance. On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.
>
> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
> (a) the same conduct or transaction, or
>
> (b) a series of connected acts, or
>
> (c) a series of acts constituting parts of a single scheme or plan.
>
> (2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial. [MCR 6.120(A) and (B).]

"MCR 6.120(B)(2) permits joinder of offenses that were not committed at the same time but nevertheless constitute 'a series of connected acts or acts constituting part of a single scheme or plan.' " *People v Williams*, 483 Mich 226, 241; 769 NW2d 605 (2009).

Considering the OWI arrest was what led to Peoples's presence in the hospital, and, therefore, the resulting assaulting, resisting, and obstructing a police officer charge, the events could properly be joined as "a series of connected acts" or "a series of acts constituting parts of a single scheme or plan." MCR 6.120(B)(1)(b) and (c). However, MCR 6.120 only provides for situations in which joinder is "appropriate." MCR 6.120(B) explicitly provides for postcharging "permissive" joinder. *Id.* The rule also uses the discretionary word, "may," instead of the mandatory word, "shall," further evidencing that joinder is a permissive, not mandatory, option. See, e.g., *People v Bell*, 276 Mich App 342, 347; 741 NW2d 57 (2007) (noting the "use of the term 'shall' rather than 'may' indicates mandatory rather than discretionary action.") (quotation marks

and citation omitted). Thus, while joinder *may* have been appropriate in this case, it was not required.

We also observe that had the prosecution joined the charges, the combined charges could have been prejudicial to Peoples. See *Baker v United States*, 131 US App DC 7, 25; 401 F2d 958 (1968); *People v Ritchie*, 85 Mich App 463, 472; 271 NW2d 276 (1978) (determining joinder of the defendant's charges and the "threat of open cross-examination" infringed on the defendant's constitutional right to testify on his own behalf).[6]

> Prejudice may develop when an accused wishes to testify on one but not the other of two joined offenses which are clearly distinct in time, place and evidence. His decision whether to testify will reflect a balancing of several factors with respect to each count: the evidence against him, the availability of defense evidence other than his testimony, the plausibility and substantiality of his testimony, the possible effects of demeanor, impeachment, and cross-examination. But if the two charges are joined for trial, it is not possible for him to weigh these factors separately as to each count. If he testifies on one count, he runs the risk that any adverse effects will influence the jury's consideration of the other count. Thus he bears the risk on both counts, although he may benefit on only one. Moreover, a defendant's silence on one count would be damaging in the face of his express denial of the other. Thus he may be coerced into testifying on the count upon which he wished to remain silent. [*Baker*, 131 US App DC at 25.]

The prosecution's decision to bring the charges in separate cases therefore did not violate MCR 6.120 or prejudice Peoples anymore than the prejudice intrinsic to the alleged conduct. On the contrary, it is very likely that the trial court would have had to consider severing the conduct at issue in this case (kicking a police officer) from the OWI charge had the prosecution brought both charges in the same case due to the risk of prejudice and temporal gap between the conduct.

Peoples nonetheless argues her attorney was ineffective because he failed to move for joinder, and the failure to join the cases denied her a fair trial because she was allegedly unable to testify in her own defense in this case out of fear of incriminating herself in the OWI case. Peoples's primary arguments below were (1) the kick was involuntary, and (2) her arrest was not lawful, and, therefore, she was entitled to resist the officers. It is unlikely that Peoples's potential testimony about the voluntariness of the kick would impact the OWI proceedings because it occurred after the OWI arrest. The only conceivable testimony that might have implicated her in the OWI proceedings would be if Peoples testified she was intoxicated at the time, and therefore her kick was involuntary. However, the blood test from the hospital provided undisputed evidence

---

[6] "While the decisions of lower federal courts and other state courts are not binding on this Court, they may be considered as persuasive authority." *People v Walker*, 328 Mich App 429, 444-445; 938 NW2d 31 (2019). Furthermore, although opinions issued before November 1, 1990, are not strictly binding pursuant to MCR 7.215(J)(1), as a published opinion, *Ritchie* nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2). See *People v Darga*, ___ Mich App ___, ___ n 6; ___ NW2d ___ (2023) (Docket No. 363178); slip op at 8-9 n 6. These rules apply to other such opinions cited here.

of Peoples's intoxication, and the trial court already informed the jury voluntary intoxication was not a defense to a charge of assaulting, resisting, and obstructing a police officer. See *People v DeLong*, 128 Mich App 1, 3; 339 NW2d 659 (1983) ("Resisting and obstructing a police officer, however, is not a specific intent crime. Voluntary intoxication, therefore, is not a defense.") (citations omitted). It is difficult to imagine a situation where Peoples, if she did testify in this case about how her arrest for the OWI was unlawful, would risk incriminating herself in her OWI case.

Peoples fails to identify how joinder would solve this purported problem. She claims she could not testify on her own behalf because she did not want to incriminate herself, but, if the cases were tried together, the risk would remain the same. Indeed, joinder may have violated Peoples's Fifth Amendment right to remain silent, because she would not be able to remain mute concerning one event while testifying regarding the other if the cases were joined. Peoples has therefore failed to demonstrate how, but for her attorney's failure to move for joinder, the case would have come out differently. *Abcumby-Blair*, 335 Mich App at 228. Because there is not a reasonable probability Peoples's attorney's failure to move for joinder impacted the outcome of the case, her attorney was not ineffective. Additionally, because joinder may have violated Peoples's Fifth Amendment rights, her attorney may have rendered ineffective assistance had he moved for joinder.[7] We conclude that there was no error in the prosecution's decision to charge separately the OWI and resisting and obstructing.

## III. JURY BIAS

---

[7] Peoples included the preservation standard for claims of prosecutorial misconduct in her brief on appeal. While she did not explicitly allege or discuss prosecutorial misconduct in her arguments, she theorized that the prosecution's decision to sever the charges may have been an attempt to preclude her from testifying on her own behalf. To the extent this constitutes an argument of prosecutorial misconduct, because joinder was not required, there cannot be said to be prosecutorial misconduct. Regarding prosecutorial misconduct, we have stated:

> [A]lthough the term "prosecutorial misconduct" has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are "better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " [*People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (citation omitted).]

"A prosecutor has broad discretion when charging defendants, and 'it is generally permissible [for a prosecutor] to charge in a single information all offenses which do arise out of a single criminal transaction or occurrence . . . .' " *People v Goold*, 241 Mich App 333, 342-343; 615 NW2d 794 (2000) (citations omitted; first alteration in original). Just as the prosecution had discretion to join the charges, it had discretion not to combine them. Furthermore, it may have been misconduct for the prosecution to join the charges, because this could have discouraged Peoples from testifying on her behalf. *Baker*, 131 US App DC at 25. There are no other arguments in Peoples's brief on appeal which develop any claim for prosecutorial misconduct.

Peoples argues the trial court erred by eliciting statements from the prospective juror about how he met Peoples while working as a corrections officer, because this informed the other potential jurors Peoples was in jail before the trial and contributed to their bias. Furthermore, the trial court failed to provide a curative instruction, and Peoples's attorney failed to object, rendering his assistance ineffective. We disagree.

Peoples's argument concerning the impact of the prospective juror's statements on the other jurors' opinions of her falls under her constitutional right to be presumed innocent until proven guilty. As such, this issue presents "a question of constitutional law that this Court reviews de novo." *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018).

"The United States Constitution and the Michigan Constitution each guarantee that a criminal defendant receives due process of law. US Const, Am XIV; Const 1963, art 1, § 17." *People v Horton*, 341 Mich App 397, 401; 989 NW2d 885 (2022). "Implicit in this guarantee is that each criminal defendant enjoys the right to a fair trial, and essential to a fair trial is the defendant's right to be presumed innocent." *Id*. "Under the presumption of innocence, guilt must be determined solely on the basis of the evidence introduced at trial rather than on official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Id*. (quotation marks and citation omitted). This Court has held jury misconduct does "not warrant relief unless the misconduct was such that it affected the impartiality of the jury or disqualified them from exercising the powers of reason and judgment." *Haynes*, 338 Mich App at 415.

While not identical with Peoples's argument, this Court considered a defendant's contention "that comments made by prospective jurors during voir dire about those jurors' biases tainted the jury, warranting a mistrial[,]" in *Haynes*, 338 Mich App at 410. This Court determined the defendant failed to show "that the remarks by some of the prospective jurors had any effect on the impartiality of the jury[,]" *id*. at 415, because

> [c]ounsel for both parties asked each of the prospective jurors selected to replace the prospective jurors who were removed whether they could decide the case on the facts and follow the trial court's instructions. Each juror agreed that they could. The trial court also administered an oath to the jurors, and they each swore to "justly decide the questions submitted" to them, to render "a true verdict," and to render that verdict "only on the evidence introduced and in accordance with the instructions of the Court." Finally, the trial court instructed the jurors that they were to decide the case on the basis of the admitted evidence and not on the basis of any biases, sympathy, or prejudice and that they should not consider the fact that [the] defendant had been charged with more than one crime. Jurors are presumed to follow their instructions, and are presumed to be impartial . . . . [*Id*. at 415-416 (citations omitted).]

Similarly, here, the trial court accurately instructed the jury, both before and after they were empaneled, of their responsibilities to consider only the evidence admitted in the case and to remain impartial. The trial court even went so far as to provide examples of what was and was not considered evidence. The trial court also informed the jurors they could not "consider any evidence that [they had] of personal knowledge of the scene[,]" and forbade them from discussing the case with each other before deliberation. "Jurors are presumed to follow their instructions, and

-11-

it is presumed that instructions cure most errors." *Mahone*, 294 Mich App at 212.  While Peoples claims the other jurors' knowledge she was in jail before the hearing biased them to believe she was a bad person, and impacted their verdict, she has presented no evidence rebutting the presumption that jurors follow their instructions.  There is nothing in the record from any empaneled juror indicating they considered the statements at issue while deliberating.  It is also worth noting the juror in question never affirmatively stated he saw Peoples as an inmate at the jail, only that he saw her while working at the jail.  However, regardless of whether the jurors heard Peoples was housed at the jail or only that she was seen at the jail, the jurors were continuously reminded to only consider admitted evidence and to set aside their biases.  While the trial court did not provide a specific curative instruction for the statement, its instructions, overall, served to cure any bias the remaining jurors had.

We have consistently reached the same conclusion in cases involving similar statements from prospective jurors during voir dire.  See, e.g., *Haynes*, 338 Mich App at 414-416; *People v Sowders*, 164 Mich App 36, 47-48; 417 NW2d 78 (1987) (holding that trial court did not err when it denied the defendant's motion for a mistrial following a prospective juror's comment that she knew a police officer involved in the case and had a favorable view of the police department based on her brother's treatment during his arrest). See also *People v McQueen*, 85 Mich App 348, 349-350; 271 NW2d 231 (1978) (affirming trial court's denial of defense motion for a mistrial when prosecution witness alluded to the defendant's prior incarceration as an inadvertent irregularity); *People v Stegall*, 102 Mich App 147, 151-153; 301 NW2d 473 (1980) (same).

Peoples also argues her attorney was ineffective because he failed to object or move for a mistrial, and this failure denied her a fair trial because she was denied her right to an impartial jury.  But her attorney successfully moved to dismiss the juror in question.  Because Peoples failed to rebut the presumption the jury followed the trial court's instructions, which included warnings to only consider admitted evidence and to remain impartial, she cannot show that, but for her attorney's failure to move for a mistrial or object, the case would have come out differently, *Abcumby-Blair*, 335 Mich App at 228, and "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel," *Ericksen*, 288 Mich App at 201.

## IV.  INSUFFICIENCY OF THE EVIDENCE

Peoples argues there was insufficient evidence to support her conviction, because the prosecution failed to establish she was voluntarily resisting the officers beyond a reasonable doubt.  She also presents the unpreserved argument she was entitled to resist the officers because their commands and actions were unlawful.  We disagree with both arguments.

"In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted).

But more importantly, "[t]he standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict.  The scope of review is the same whether the evidence is direct

-12-

or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." [*Id.* (citation omitted; alteration and emphasis in original).]

"It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id.* (quotation marks and citation omitted; emphasis in original).

As stated, to prove the charge of assaulting, resisting, or obstructing a police officer, the prosecution must prove three elements. First, it must prove that Peoples assaulted, resisted, or obstructed a police officer. See MCL 750.81d(1); *Morris*, 314 Mich App at 413-414. " 'Obstruct' includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a). Second, the prosecution must prove that Peoples knew that the individual was a police officer performing their lawful duties at the time. See MCL 750.81d(1); *Morris*, 314 Mich App at 413-414. Third, the police officer gave the Peoples a lawful command, was making a lawful arrest, or was otherwise performing a lawful act. *Quinn*, 305 Mich App at 492. ( "[T]he prosecution must establish that the officers' actions were lawful as an element of resisting or obstructing a police officer under MCL 750.81d.") (quotation marks and citation omitted). Only the first and third element are at issue in this appeal.

Regarding the first element, obstruction, Peoples argues that there was insufficient evidence that her kick was voluntary. The prosecution presented the testimonies of Riffle and Raymond at trial. Regardless of the inconsistencies between their testimonies of whether the kick occurred before or after the compliance maneuvers, both officers testified Peoples was initially thrashing or flailing around, but distinguished this behavior from when she kicked Raymond. There was sufficient evidence from Riffle's and Raymond's testimonies for a reasonable juror to find that Peoples, while initially flailing involuntarily, changed her behavior and intentionally kicked Raymond. Peoples argues the kick was a reaction to the pain from the compliance maneuvers. Riffle's and Raymond's testimonies differ concerning whether Peoples kicked Raymond before or after the compliance techniques were implemented. However, considering it was Raymond, not Riffle, who she kicked, and, given the deferential standard of review, it was reasonable for jurors to find Raymond's recitation of the facts to be more accurate. While it was confirmed the compliance techniques could cause pain, Raymond's testimony indicated Peoples readjusted her position to get a better angle to kick him, indicating the kick was not an involuntary reaction to pain, but an intentional decision, regardless of whether the compliance techniques had been implemented. There was sufficient evidence to convince a reasonable juror Peoples voluntarily kicked Raymond.

Regarding the third element, lawfulness of the police conduct or command, Peoples claims that her actions were permissible because it is not illegal to eat a disposable cup, making the officers' commands to spit it out unlawful, therefore entitling her to resist. "Under MCL 750.81d(1), it is illegal to assault, batter, resist, or obstruct an officer even if the officer is taking unlawful action, as long as the officer's actions are done in the performance of the officer's official duties." *People v Corr*, 287 Mich App 499, 504; 788 NW2d 860 (2010). There is no question the officers were performing their official duties, because Peoples was in their custody after being arrested for driving under the influence, and they were trying to transport her to the jail. Further, the commands were lawful because while Peoples was in the officers' custody they had a duty to

protect her. See *Dean v Childs*, 262 Mich App 48, 54; 684 NW2d 894 (2004), rev'd in part on other grounds 474 Mich 914 (2005). Because the officers had an obligation to ensure Peoples's safety, and there was sufficient evidence at trial that her behavior presented this concern, not only were the officers making a lawful command, they were performing a lawful act by using force to remove the cup after Peoples refused to comply with their commands. Therefore, the officers' commands and actions were lawful, and defendant was not entitled to resist them, let alone assault them.

## V. UNREASONABLE AND DISPROPORTIONATE SENTENCE

Finally, Peoples argues, despite falling within the guidelines range, her sentence was disproportionate, because the trial court failed to consider her rehabilitative potential and good behavior while in custody, and the fact the crime was not severe. She further contends the trial court improperly considered her prior criminal history, because this was already considered by the guidelines, and her alleged disrespectful behavior to the court and its staff, because it failed to articulate what this behavior was. We disagree.

We review the reasonableness of a trial court's sentence for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017) (*Steanhouse II*). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Foster*, 319 Mich App 365, 375; 901 NW2d 127 (2017).

At the threshold, our Supreme Court has held that both guidelines sentences and departures are reviewed for reasonableness. *People v Posey*, 512 Mich 317, 326, 352; ___ NW2d ___ (2023); *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). A sentence is unreasonable if it violates the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). *Steanhouse II*, 500 Mich at 459-460, 473. The principle of proportionality requires a sentence "to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 460 (quotation marks and citation omitted).

Under the proportionality standard, a trial court may consider the seriousness of the offense, factors that were inadequately considered by the guidelines, and factors not considered by the guidelines. See *People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017), quoting *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (*Steanhouse I*) (providing a nonexhaustive list of sentencing factors). A sentence within the guidelines range is subject to a nonbinding rebuttable presumption of proportionality that the defendant bears the burden of rebutting. *Posey*, 512 Mich at 360.

Peoples argues her sentence was not proportionate because the trial court failed to consider mitigating factors, such as potential rehabilitation considering her education, the purported lack of severity of the crime, and her good behavior in custody. She also argues the trial court improperly considered other factors already addressed by her guidelines range, namely her criminal history. We note that "trial courts are not required to expressly or explicitly consider mitigating factors at sentencing." *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 370 (2019). Still, the trial court appears to have considered the totality of her background and conduct. Contrary to Peoples's argument, this offense was serious. She attempted to swallow a portion of a disposable cup while in custody, posing a risk of self-harm. The offense conduct here is also comparatively serious.

-14-

Unlike many resisting and obstructing convictions, this case involves an assault on a police officer: a kick. The trial court considered her past conduct and appropriately took into account her prior police contacts when fashioning the sentence. The trial court sentenced her within the guidelines range to 30 days in jail and two years' probation. This affords her the opportunity for treatment and rehabilitation contrary to her contention. We conclude that the sentence was proportionate and reasonable and the trial court did not abuse its discretion.

        We affirm.

/s/ Elizabeth L. Gleicher
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado