# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JAY BRADLEY MORRIS,

      Defendant-Appellant.

FOR PUBLICATION
February 11, 2016
9:10 a.m.

No. 323762
Calhoun Circuit Court
LC No. 2014-001440-FH

Before: BOONSTRA, P.J., and K. F. KELLY and MURRAY, JJ.

MURRAY, J.

Defendant was convicted after a jury trial of one count of resisting/obstructing a police officer, in violation of MCL 750.81d(1). Defendant was sentenced to six months in the county jail. In this appeal defendant challenges the factual support for his conviction as well as the constitutionality of the statute. For the reasons expressed below, we affirm.

## I. FACTUAL BACKGROUND

In the early morning hours of April 19, 2014, Battle Creek Police Officer Trevor Galbraith and Sergeant John Chrenenko were separately dispatched to a Battle Creek gas station in response to a report that a potentially suicidal man was at the gas station armed with a gun.[1] Galbraith arrived at the station first and, once inside, saw defendant near the cash register. Galbraith approached defendant with his gun drawn until he realized that defendant did not have a gun in his hands. Galbraith then grabbed defendant and placed his hands behind his back. Defendant was then turned over to Chrenenko. At this point, both officers knew that defendant did not have a gun in either hand, but in light of the initial call they remained concerned that he may still have a gun in his clothing. Chrenenko testified that for this reason he wanted to put defendant in handcuffs. Both officers testified that once outside the gas station's enclosed building, defendant stiffened up and broke their grip. A struggle ensued in which the officers commanded defendant to go to the ground, and when defendant did not comply, the officers forced him down. According to both officers, defendant also refused to comply with commands

---

[1] Defendant acknowledged at trial that he in fact had called the police department to inform the police that he was at the gas station, was suicidal, and had a gun.

to put his arms behind his back, so they had to force him into handcuffs. Both officers also smelled alcohol on defendant, but Chrenenko did not believe defendant was too intoxicated. No weapon was found on defendant.

Defendant testified that he suffers from psychotic episodes, had been off his medication for six months prior to the night of the incident, and had been drinking. According to defendant, when he heard that he was being placed in handcuffs, he asked why and told the officers he just wanted help. Defendant agreed that a struggle ensued (which he described as "tousling"), but also stated that he complied as much as possible. He also claimed to have blacked out for parts of the encounter.

After hearing the evidence, the jury convicted defendant, and then defendant was sentenced, as outlined above. We now turn to the issues raised.

## II. ANALYSIS

### A. CONSTITUTIONALITY OF MCL 750.81

Defendant contends that MCL 750.81d is unconstitutional as being both overbroad and vague. Defendant did not raise these constitutional challenges at any point during the trial court proceedings, rendering the issues unpreserved. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). We therefore review these unpreserved issues for a plain error affecting substantial rights. *People v Schumacher*, 276 Mich App 165, 177; 740 NW2d 534 (2007).

In relevant part, MCL 750.81d reads as follows:

(1) Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

\* \* \*

(7) As used in this section:

(a) "Obstruct" includes the use or threatened use of physical force or a knowing failure to comply with a lawful command.

(b) "Person" means any of the following:

(*i*) A police officer of this state or a political subdivision of this state including, but not limited to, a motor carrier officer or capitol security officer of the department of state police.

Recognizing the stringent standards applicable when reviewing the constitutionality of a statute is critical to properly resolving these issues. We expressed those standards in *People v*

*Vandenberg*, 307 Mich App 57, 62; 859 NW2d 229 (2014), which we apply with equal force to this case:

> When considering the constitutionality of a statute, we begin with the presumption that statutes are constitutional and we construe statutes consistent with this presumption unless their unconstitutionality is readily apparent. *People v Rogers*, 249 Mich App 77, 94; 641 NW2d 595 (2001). The party challenging a statute's constitutionality bears the burden of proving its invalidity. *People v Malone*, 287 Mich App 648, 658; 792 NW2d 7 (2010) [overruled in part on other grounds by *People v Jackson*, 498 Mich 246; 869 NW2d 253].


## 1.  FACIALLY OVERBROAD CHALLENGE

Citing *People v Rapp*, 492 Mich 67; 821 NW2d 452 (2012), defendant argues that MCL 750.81d(1) is facially overbroad because nothing in the statute limits how an individual can be said to have "resisted", "obstructed", or "opposed" a police officer,[2] and so it is possible that asking simple questions of an officer could be construed as criminal.[3]  And, of course, asking an officer "simple questions" is typically—though not always[4]—protected by the First Amendment to the United States Constitution and article 1, § 5 of the Michigan Constitution of 1963.

---

[2] We use the term police officer because police officers were involved in this case and fall within the definition of a "person" who is protected by the statute.  MCL 750.81d(7)(b).  But police officers are not the only officials falling within that definition.

[3] At issue in *Rapp* was a Michigan State University ordinance providing that " '[n]o person shall disrupt the normal activity or molest the property of any person, firm, or agency while that person, firm, or agency is carrying out service, activity or agreement for or with the University.' " *Rapp*, 492 Mich at 71 n 4.  The ordinance was held to be facially overbroad because it did not specify the types of disruptions covered by the ordinance and, thus, allowed enforcement of "even *verbal* disruptions." *Id.* at 76.  The Court went on to state that the verbal disruptions the statute prohibited were not limited to fighting words or obscene language. *Id.*  Thus, because the statute could be understood as providing police with the " 'unfettered discretion to arrest individuals for *words* or *conduct* that annoy or offend them,' " it was facially unconstitutional. *Id.* at 79, quoting *Houston v Hill*, 482 US 451, 465; 107 S Ct 2502; 96 L Ed 2d 398 (1987).

[4] The Free Speech clause protects government restrictions on all speech "except for certain narrow categories deemed unworthy of full First Amendment protection-such as obscenity, 'fighting words,' and libel." *Eichenlaub v Twp of Indiana*, 385 F3d 274, 282-83 (CA 3, 2004), quoting *RAV v St Paul*, 505 US 377, 382-90; 112 S Ct 2538; 120 L Ed 2d 305 (1992). Consequently, not *all* comments or questions to police are entitled to full constitutional protection.  See, e.g., *People v Philabaun*, 461 Mich 255, 263; 602 NW2d 371 (1999).

The test for reviewing a constitutional challenge to a statute on the basis that it is overbroad was set forth in *People v Gaines*, 306 Mich App 289, 320-321; 856 NW2d 222 (2014):

> A statute is overbroad when it precludes or prohibits constitutionally protected conduct in addition to conduct or behavior that it may legitimately regulate. *People v McCumby*, 130 Mich App 710, 714; 344 NW2d 338 (1983). Under the overbreadth doctrine, a defendant may "challenge the constitutionality of a statute on the basis of the hypothetical application of the statute to third parties not before the court." *People v Rogers*, 249 Mich App 77, 95; 641 NW2d 595 (2001). Defendant argues that the statute regulates both speech and conduct. Therefore, defendant must demonstrate that the overbreadth of the statute is both real and substantial—there is a " 'realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.' " *Id.* at 96, quoting *Los Angeles City Council v Taxpayers for Vincent*, 466 US 789, 801; 104 S Ct 2118; 80 L Ed 2d 772 (1984). The statute will not be found to be facially invalid on overbreadth grounds, however, "where it has been or could be afforded a narrow and limiting construction by state courts or if the unconstitutionally overbroad part of the statute can be severed." *Rogers*, 249 Mich App at 96.

Thus, even if a criminal statute has a "legitimate application," and virtually all do, it is nevertheless unconstitutional if it stretches so far that it makes "unlawful a substantial amount of constitutionally protected conduct." *Houston v Hill*, 482 US 451, 459; 107 S Ct 2502; 96 L Ed 2d 398 (1987). In order to balance the competing interests of protecting free speech and "the free exchange of ideas" with the interest of upholding laws "directed at conduct so antisocial that it has been made criminal," a reviewing court is required to find "that a statute's overbreadth be *substantial*" in order to justify invalidation. *United States v Williams*, 553 US 285, 292-293; 128 S Ct 1830; 170 L Ed 2d 650 (2008). See also *Village of Hoffman Estates v The Flipside, Hoffman Estates, Inc*, 455 US 489, 494; 102 S Ct 1186; 71 L Ed 2d 362 (1982).

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Williams*, 533 US at 293. Not surprisingly, in interpreting a statute we are first and foremost guided by the words of the statute itself. *People v Gillis*, 474 Mich 105, 114; 712 NW2d 419 (2006). We must also keep in mind the context within which the words are found, *People v Vasquez*, 465 Mich 83, 89; 631 NW2d 711 (2001) (opinion by MARKMAN, J.), such as the Legislature placing the statute within chapter XI of the Penal Code, MCL 750.1 *et seq.*, which compiles the listed crimes under the heading "Assaults."

For several reasons we conclude that the terms of the statute are clear and have a narrow application that does not run afoul of the state or federal constitutions. First, this Court has determined that "the unambiguous language of [MCL 750.81d(1)] . . . shows that the Legislature intended that the statute encompass all the duties of a police officer so long as the officer is acting in the performance of those duties." *People v Corr*, 287 Mich App 499, 505; 788 NW2d 860 (2010). So, to fall under the statute the individual must assault, batter, wound, resist,

obstruct, oppose or endanger an officer who is performing his duties. Second, the terms challenged by defendant are clear and well defined. Indeed, in *Vasquez*, 465 Mich at 89-91 (opinion by MARKMAN, J.), a plurality of the Court defined amongst others the terms "resist", "oppose", "assault", and "wound" under another resisting statute, MCL 750.479:

> In the present case, the statute uses the word "obstruct" as part of a list containing five other words, namely, "resist, oppose, assault, beat [and] wound." The meaning of the word "obstruct" should be determined in this particular context, and be given a meaning logically related to the five surrounding words of the statute. "Resist" is defined as "to withstand, strive against, or oppose." *Random House Webster's College Dictionary* (1991) at 1146. "Resistance" is additionally defined as "the opposition offered by one thing, force, etc." *Id.* "Oppose" is defined as "to act against or furnish resistance to; combat" *Id.* at 949. "Assault" is defined as "a sudden violent attack; onslaught." *Id.* at 82. "Beat" is defined as "to strike forcefully and repeatedly; . . . to hit repeatedly as to cause painful injury." *Id.* at 120. "Wound" is defined as "to inflict a wound upon; injure; hurt." *Id.* at 1537. Each of these words, when read together, clearly implies an element of threatened or actual *physical* interference.

The *Vasquez* Court struggled to define the term "obstruct," as several possible definitions potentially fit in the context of the statute's subject matter. *Vasquez*, 465 Mich at 91 (opinion by MARKMAN, J.).[5] But a year after *Vasquez* the Legislature defined the term "obstruct" to mean "the use or threatened use of physical force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a).[6]

We see no reason to provide definitions different than those articulated by the *Vasquez* Court. For one, the aforementioned terms are the same as employed in MCL 750.81d, and thus are used in the same context of resisting and obstructing. Additionally, we often engage in the presumption that the Legislature is aware of definitions given to terms by the judiciary, and that the re-enactment of those same terms in the same context without providing any definitions is an acceptance of the meaning provided by the courts. See, e.g., *Aroma Wines & Equipment, Inc v*

---

[5] In the end both the lead opinion and the separate opinion of Justice KELLY agreed that "obstruct" required some element of physical interference, or the threat of physical interference. See *Vasquez*, 465 Mich at 90 (opinion by MARKMAN, J.), 115 (opinion by KELLY, J).

[6] As recognized by the United States Court of Appeals for the Sixth Circuit, albeit in a different context, in 2002 the Legislature enacted MCL 750.81d in apparent response to *Vasquez*. *United States v Mosley*, 575 F3d 603, 606 (CA 6, 2009). The definition of "obstruct" provided in MCL 750.81d(7)(a) in part includes a "knowing failure to comply" component, which the *Mosley* court said was not a "crime of violence" for purposes of federal sentencing. *Id*. But for our purposes, it is enough to say that obstructing an officer through a "knowing failure to comply with a lawful command" requires some physical refusal to comply with a command, as opposed to a mere verbal statement of disagreement. See, e.g., *People v Chapo*, 283 Mich App 360, 367-368; 770 NW2d 68 (2009).

*Columbian Distribution Services, Inc*, 497 Mich 337, 347; 871 NW2d 136 (2015) and *Pulver v Dundee Cement Co*, 445 Mich 68, 75; 515 NW2d 728 (1994) ("when the Legislature codifies a judicially defined requirement without defining it itself, a logical conclusion is that the Legislature intended to adopt the judiciary's interpretation of that requirement."). Here, the Legislature enacted MCL 750.81d the year after *Vasquez* was decided, and only provided a definition for "obstruct," the term the *Vasquez* Court had struggled to define, and left undefined the other terms defined by the Court. We therefore conclude that the legislature approved of the Court's definitions when employing their use in this later statute, and we adopt those as controlling under MCL 750.81d.

The terms "batters" and "endangers" are not defined in the statute, nor were they defined by the *Vasquez* Court, so we must consult a dictionary or similar source to give the terms their plain and ordinary meaning. *People v Peals*, 476 Mich 636, 641; 720 NW2d 196 (2006). "A battery is the wilful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Espinoza v Thomas*, 189 Mich App 110, 119; 472 NW2d 16 (1991). See also M Crim JI 17.2(2). The verb "endanger" means "to bring into danger or peril." *Merriam-Webster's Collegiate Dictionary* (11th ed). Any interpretation of the meaning of these two terms must also be mindful of both where they have been placed in the statutory scheme (i.e., chapter XI of the Penal Code, which contains assaultive crimes) and that the Legislature listed them in a group of words that includes "assault," "wound" and "obstructs," each of which contain an element of physical action. See *GC Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421-422; 662 NW2d 710 (2003) ("It is a familiar principle of statutory construction that words grouped in a list should be given related meaning.") and *Vasquez*, 465 Mich at 89 (opinion by MARKMAN, J.) ("Contextual understanding of statutes is generally grounded in the doctrine of *noscitur a sociis:* '[i]t is known from its associates,' see Black's Law Dictionary (6th ed.), at 1060. This doctrine stands for the principle that a word or phrase is given meaning by its context or setting. [I]n seeking meaning, words and clauses will not be divorced from those which precede and those which follow.") (citation and quotation marks omitted).

In light of these definitions and the context in which the words are used, we conclude that MCL 750.81d is designed to protect persons in the identified occupations, MCL 750.81d(7)(b), who are lawfully engaged in conducting the duties of their occupations, from physical interference, or the threat of physical interference. As we have noted, the *Vasquez* Court came to the same conclusion when addressing the meaning of many of these same terms under the predecessor statute, MCL 750.479, and held that the six words together revealed a legislative intention "to proscribe both violent and nonviolent physical interference; physical interference being the only element common to all six words." *Id*. at 91. See also, *People v Baker*, 127 Mich App 297, 299-300; 338 NW2d 391 (1983) (Court noted that "the purpose of the resisting arrest statute [MCL 750.479] is to protect police officers from physical violence and harm.")

The same holds true with MCL 750.81d. The listed terms all have the common element of physical interference, and the meaning of the additional terms contained in MCL 750.81d that were not in the predecessor statute (endanger and batter) only reinforce that conclusion. Accordingly, because we must test the statute according to the construction provided by the court, *Gaines*, 306 Mich App at 321, we hold that the statute is not facially overbroad because state actors cannot under this statute arrest and convict persons for *only* utilizing constitutionally

-6-

protected words in opposition to the actions of, for example, a police officer. See *Bourgeois v Strawn*, 501 F Supp 2d 978, 988 (ED Mich, 2007) ("Merely to voice one's objection to an officer's belief as to who is the guilty party does not amount to a proscribed act under [MCL 750.81d] . . . ."). Properly construed, MCL 750.81d is not constitutionally overbroad.

## 2. VOID FOR VAGUENESS CHALLENGE

In order to avoid convicting residents for conduct that is constitutionally protected, "[c]rimes must be defined with appropriate definiteness." *Pierce v United States*, 314 US 306, 311; 62 S Ct 237; 86 L Ed 226 (1941). The law must provide "ascertainable standards of guilt" because "[m]en of common intelligence cannot be required to guess at the meaning of the enactment." *Winters v New York*, 333 US 507, 515; 68 S Ct 665; 92 L Ed 840 (1948). In *People v Tombs*, 260 Mich App 201, 218; 679 NW2d 77 (2003), we stated that:

> A statute may be challenged for vagueness on three grounds: (1) It does not provide fair notice of the conduct proscribed; (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed; (3) its coverage is overbroad and infringes on First Amendment freedoms.

Defendant's argument is targeted at the second challenge, i.e., that the statute as applied to him gave the trier of fact unstructured and unlimited discretion to determine whether he committed an offense. Because "[a] statute is sufficiently definite if its meaning can fairly be ascertained by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meaning of words," *People v Beam*, 244 Mich App 103, 105; 624 NW2d 764 (2000), defendant's argument fails.[7]

As stated, MCL 750.81d(1) generally prohibits the use of, or threat to use, physical interference in opposing an officer from performing his or her lawful duties. While it is true that the trial court did not specifically define the terms "resist" or "oppose" for the jury, a person of ordinary intelligence would not be forced to guess about their meaning. As described above, resorting to the dictionary or Supreme Court decisions makes clear the meaning of these common and straightforward words. Thus, a person of ordinary intelligence would know that an individual using some form of force to prevent a police officer from performing an official and

---

[7] Our Court previously considered a void for vagueness challenge to MCL 750.81d, but to a different part of the statute. In *People v Nichols*, 262 Mich App 408, 413-415; 686 NW2d 502 (2004), we held that the phrase "knows or has reason to know" within MCL 750.81d was "fairly ascertainable by persons of ordinary intelligence and may be easily applied in the context of resisting arrest under" the statute.

lawful duty is in violation of MCL 750.81d(1).[8]  And, as discussed below, there was ample evidence supporting the jury's determination that defendant acted contrary to the statute.

## B.  GREAT WEIGHT OF THE EVIDENCE

Defendant also raises an unpreserved challenge to the verdict based upon a great-weight-of-the-evidence challenge.  To convict a defendant under MCL 750.81d(1), plaintiff must prove: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties."  *Corr*, 287 Mich App at 503.

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand."  *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009).  Generally, a verdict is against the great weight of the evidence only when "it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence."  *Id.*  The general rule is that in most cases, " 'conflicting testimony or a question as to the credibility of a witness is not sufficient grounds for granting a new trial.' "  *People v Lemmon*, 456 Mich 625, 643; 576 NW2d 129 (1998), quoting *United States v Garcia*, 978 F2d 746, 748 (CA 1, 1992).  And, as a result of that rule, a trial court may not grant a new trial on the ground that it disbelieves the testimony of the prevailing party. *Lemmon*, 456 Mich at 636.

In support of his contention that the verdict was against the great weight of the evidence, defendant emphasizes that (1) the incident occurred in a short amount of time and that he never ran, (2) he was intoxicated and seeking help, and (3) he never assaulted the police officers. However, to convict defendant it was not necessary for the jury to find that defendant actually ran away from the officers or physically assaulted them.  All that was necessary was to find that he was taking the requisite physical action to prevent a police officer from performing his lawful duties.  Additionally, the duration of the resistance or the mental state of defendant at the time is of no import, as resistance can occur in even the briefest of moments, and the statute does not require that defendant be found to be free of any mitigating motivation.[9]

---

[8] Although the trial court did not specifically state that all twelve jurors must be in agreement on which officer defendant resisted, obstructed, or opposed, the trial court did instruct the jurors that it was a necessary element that defendant knew the person he was resisting, obstructing, or opposing was a police officer.  The jury's guilty verdict shows that regardless of which officer each member of the jury had in mind, all twelve jurors determined that defendant had knowledge he was resisting or obstructing a police officer.

[9] Defendant also points to his testimony that he complied as much as possible and that any non-compliance was accredited to intoxication, general confusion, and blackouts related to a psychotic episode.  Such arguments are merely assertions that defendant's version of events should have been believed over the version of events described by the police officers.  A

The jury apparently found credible both the officer's testimony that defendant refused to comply with loud and clear commands, and defendant's admission that he quite probably was uncooperative with the officers. The jury also presumably believed the officers when they testified that, in response to their commands, defendant tightened his body. Galbraith also testified that defendant "pull[ed] his arm away, at which time we both have to grab him." Defendant himself stated that he and the officers were "tousling," which can be reasonably understood to mean some level of physical struggling. And, at no point before the trial court or on appeal has defendant made any argument that the police officers were not lawfully engaged in the exercise of their official duties or that he did not know or have reason to know that they were police officers. In light of all this evidence, it cannot be said that the jury's verdict was against the great weight of the evidence.

Affirmed.

/s/ Christopher M. Murray
/s/ Mark T. Boonstra
/s/ Kirsten Frank Kelly

---

reviewing court may not grant a new trial on the grounds that it disbelieves the testimony of the prevailing party. *Id*.