*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PAUL ANTHONY BURKE,

        Defendant-Appellant.

UNPUBLISHED
December 15, 2022

No. 359552
Jackson Circuit Court
LC No. 18-003623-FH

Before: SHAPIRO, P.J., and BORRELLO and YATES, JJ.

PER CURIAM.

Defendant, Paul Anthony Burke, appeals as of right his convictions by jury verdict on one count of third-degree fleeing and eluding a law-enforcement officer, MCL 750.479a(3), and one count of resisting and obstructing a law-enforcement officer, MCL 750.81d(1). Defendant argues that his due-process rights were violated because there was not sufficient evidence to support his conviction for resisting and obstructing and because evidence of a personal protection order (PPO) was admitted at trial in violation of MRE 404(b). We affirm.

## I. FACTUAL BACKGROUND

At Christmas in 2018, defendant drove from his home in Nevada to Michigan to drop off gift cards for his grandchildren and to try to see his estranged family. As defendant was nearing his childhood home, he called to advise his family of his impending arrival. Unfortunately for defendant, that arrival was unwelcome. Someone at the residence called the sheriff's office to let them know that defendant was making an appearance at a location that was restricted to him based upon a PPO. Defendant admitted that he stopped by the home, but he did not say how long he was there before he went back to his vehicle and left.

Three sheriff's deputies were dispatched to the home. Before arriving at the house, Deputy Laughlin saw defendant's Ford Bronco at a stop sign in the neighborhood. After seeing the Nevada license plate, Deputy Laughlin activated his lights and siren and turned around to follow defendant. Deputy Laughlin called in his location and the other two deputies turned around to join the pursuit of defendant. Dash-camera footage showed that the deputies did not catch up to defendant until defendant turned back onto the street where the family home was located. Defendant stated that

-1-

he did not recall seeing the flashing lights and claimed he was distracted as he wrestled with the idea of returning to the home to deliver the gift cards he had neglected to leave on his initial visit.

When defendant pulled into the driveway and stepped out of his vehicle, Deputy Laughlin and the other two deputies stopped their cars in or near the driveway behind defendant. Deputy Laughlin immediately left his patrol car with his gun drawn and began giving verbal commands to defendant to stop and put his hands in the air. Defendant looked back at the deputies but did not comply with Deputy Laughlin's commands. After defendant took two steps towards the house, Deputy Laughlin approached defendant and pinned him to the trunk of a vehicle that was parked in the driveway. All three officers then arrested defendant. Defendant subsequently admitted that he did not put his hands up at any point and did not stop walking until the officers seized him.

Before trial began and outside the presence of the jury, the prosecution asked the trial court to rule on the admissibility of evidence of the PPO. Defendant objected to the admission of that evidence, asserting that the evidence was inadmissible under MRE 404(b) because it was evidence of other crimes and that defendant had not received proper notice of such evidence. The trial court ruled that evidence of the PPO could only be admitted for the limited purpose of establishing that it was the reason that deputies were dispatched. Furthermore, during the trial, the trial court paused the proceedings to explain on the record that the jury was not to consider the truth of the matter of the PPO; the jury was only supposed to know that it was the reason for police involvement. Despite providing that instruction, after defendant testified on his own behalf, the trial court questioned him about the PPO:

> [*Trial Court*]: That's why they went over there, right? It had to do with the PPO, or something of that nature? Was there somebody there that had a personal protection order against you?
>
> [*Defendant*]: Between the—yes. Yes, there was.
>
> [*Trial Court*]: And you weren't supposed to be on that property, pursuant to the personal protection order; is that correct?
>
> [*Defendant*]: I didn't know she was there. It was—there was a bunch of family members there.

Defense counsel did not object to the trial court's questions. At the conclusion of the trial, the jury convicted defendant of fleeing and eluding and resisting and obstructing. This appeal now follows.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the record contains insufficient evidence to convict him of resisting and obstructing because he did not have time to react to Deputy Laughlin's lawful command. We disagree. This Court reviews de novo "whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992) (quotation marks and citation omitted). Circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). We "must view the evidence in a light most favorable to the prosecution[,]" *Wolfe*, 440 Mich at 515, and "defer to the

-2-

fact-finder by drawing all reasonable inferences and resolving credibility conflicts in support of the jury verdict." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 535 (2007).

On appeal, defendant simply argues that the evidence at trial was not sufficient to establish that he obstructed Deputy Laughlin. Under MCL 750.81d(7)(a), "obstruct" is defined to include "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." Defendant directs us to consider a recent unpublished opinion of this Court where a suspect refused to leave a residence after two deputies pounded on a door and announced their presence. *People v Divich*, unpublished per curiam opinion of the Court of Appeals, issued March 3, 2022 (Docket No. 356130).[1] In that case, the defendant did not comply with police commands for more than an hour, and he was subsequently convicted of resisting and obstructing. *Id*. at 3. Here, defendant argues that, because he was immediately apprehended with guns drawn, there was not enough time to demonstrate resistance. This argument is unpersuasive, as this Court has previously stated that the duration is not important because resistance "can occur in the briefest of moments[.]" *People v Morris*, 314 Mich App 399, 415; 886 NW2d 910 (2016).

Assessing the evidence in the light most favorable to the prosecution, the record contains sufficient evidence for a rational trier of fact to conclude that defendant knowingly failed to comply with Deputy Laughlin's lawful commands. Before returning to the home, defendant should have noticed that deputies were attempting to stop him. Three clearly marked police cars were following his vehicle with their sirens and lights activated. Furthermore, after exiting his vehicle, defendant ignored Deputy Laughlin's loud commands to stop and put his hands up. The deputies observed defendant ignore Deputy Laughlin's order and continue walking towards the house. Defendant himself stated that he briefly saw the officers behind him after he left his vehicle. Defendant also admitted that he did not put his hands up at any point and did not stop until the officers placed him in handcuffs. Regardless of how briefly defendant failed to comply, the evidence establishes that he refused to obey the lawful commands of Deputy Laughlin. *Morris*, 314 Mich App at 414-415. After listening to all of the testimony and viewing the dash-camera footage,[2] the jury did not find defendant's description of the encounter believable.[3] As a result, defendant's due-process rights were not violated, so his conviction for resisting and obstructing must stand.

### III. PERSONAL PROTECTION ORDER

Defendant next contends that the trial court did not apply the relevant factors under MRE 404(b)(1) in deciding whether the PPO was admissible other-acts evidence, nor did the prosecution provide notice under MRE 404(b)(2) that it intended to introduce evidence of the PPO. Moreover, defendant insists that the trial court erred when it questioned him about the PPO because the court's questions strayed beyond the purpose for which the PPO was admissible. We disagree.

---

[1] Unpublished opinions are not binding, but we may consider them if they are persuasive. *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004); MCR 7.215(C)(1).

[2] The dash-camera footage was presented to the jury without an audio component.

[3] This Court will not second-guess the credibility determinations of the jury. See *Wolfe*, 440 Mich at 514-515.

A trial court's analysis of a rule of evidence is a question of law reviewed de novo. *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015). In contrast, the decision "whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion." *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). Such an abuse of discretion occurs if the decision "falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

The trial court admitted testimony about the PPO to establish the reason that deputies were dispatched to the residence. An element of the crime of resisting and obstructing is that Deputy Laughlin gave the defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act. See M Crim JI 13.1. If there had been no reference to the PPO, the prosecution could not have demonstrated that Deputy Laughlin was acting lawfully in arresting defendant. The existence of the PPO was not other-acts evidence because it directly supported an element of the offense of resisting and obstructing. See *Jackson*, 498 Mich at 262. Defendant's concern that he was improperly deprived of notice under MRE 404(b)(2) and that the PPO was not admissible under MRE 404(b)(1) are immaterial. Simply stated, the existence of the PPO was not other-acts evidence, so the trial court had no reason to follow the requirements of MRE 404(b).

Given this conclusion, we also must decide whether the trial court erred when it questioned defendant about the PPO. This issue is unpreserved because defendant did not object to the trial court's questioning at trial, so we review this issue for plain error. *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015). Thus, defendant must show that: (1) an error occurred; (2) the error was "plain"—i.e., clear or obvious; and (3) the error affected substantial rights—i.e., the outcome of the lower court proceedings was affected. *Carines*, 460 Mich at 763. Even assuming that plain error occurred, defendant cannot establish that the error affected his substantial rights. *Id*. The only evidence that could result from the trial court's questions to defendant was that there was a PPO against defendant, that defendant did not know that the protected person was there, and that many of his family members were at the residence. The line of questioning did not elicit details about why the PPO was issued. The trial court gave a limiting instruction that the PPO was to be considered only to explain why the deputies were present. The trial court instructed the jury that the judge's own questions were not evidence. Jurors are presumed to follow the jury instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Evidence of the existence of a PPO against defendant did not affect the outcome of the trial in light of the overwhelming evidence of defendant's guilt.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Christopher P. Yates