*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* CONTEMPT OF MARSHALL TAUBER.

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MONTELL DAVONTAE BENNETT,

       Defendant,

and

MARSHALL TAUBER,

       Appellant.

UNPUBLISHED
September 30, 2025
1:37 PM

No. 371447
Oakland Circuit Court
LC No. 2024-287677-FH
         2024-287702-FH
         2024-287703-FH

---

Before: LETICA, P.J., and RICK and BAZZI, JJ.

PER CURIAM.

Appellant, Marshall Tauber, appeals as of right the order entered by Oakland Circuit Court Judge Yasmine I. Poles that held him in criminal contempt and required him to pay a fine of $7,500. Appellant, an attorney, was appointed to represent a criminal defendant. A hearing addressing bond was held over Zoom before Judge Poles. After the court's bond ruling, appellant apparently believed that the Zoom hearing had disconnected and used derogatory curse words apparently in reference to the judge. But, the judge heard appellant, and he was held in criminal contempt. On appeal, appellant alleges that he was deprived of due process and there was insufficient evidence to support the criminal contempt. We affirm.

-1-

## I. BASIC FACTS AND PROCEDURAL HISTORY

Appellant's criminal contempt arises from his representation of defendant Montell Davontae Bennett (Bennett). According to the first information, Bennett was charged with two counts of uttering and publishing, MCL 750.249. On August 11, 2023, Bennett allegedly presented a fraudulent instrument, specifically, a check in the amount of $800 to the Happy Hour Party Store in Auburn Hills, Michigan. This information further indicated that on August 12, 2023, Bennett presented a fraudulent instrument, specifically, a check in the amount of $675.25, to the same party store. According to the district court register of actions, the offenses occurred in August 2023, the complaint was authorized on September 15, 2023, the complaint was issued on September 19, 2023, and the warrant was signed on September 20, 2023. The register of actions further indicated that Bennett's girlfriend contacted the district court and advised that Bennett was in the Macomb County Jail also for a felony charge of uttering and publishing. She sought to have Bennett arraigned on these charges. A writ was issued, and Bennett was arraigned on December 19, 2023. Bennett's bond was set at $6,000, with 10% cash/surety. On January 22, 2024, Bennett was bound over to circuit court after waiving the preliminary examination.

On January 26, 2024, Bennett waived his circuit court arraignment, stood mute, and a pretrial was scheduled for March 7, 2024. Appellant represented Bennett at that time. On February 26, 2024, the prosecution filed its notice of intent to seek habitual fourth enhancement because of defendant's prior convictions for uttering and publishing; financial transaction device, stealing/retaining without consent; and carrying a concealed weapon.

On May 30, 2024, a pretrial was held before Judge Poles. Appellant stated that Bennett was arraigned on a new case in district court on May 29, 2024, that appellant was also appointed to represent Bennett in that matter, and that it was their intent to waive the probable cause conference. In response to the trial court's inquiry, appellant answered that it was another charge of uttering and publishing that occurred in 2023. Appellant also noted that all of Bennett's charges occurred in 2023, but they were coming through the system individually. After appellant's statement, the trial court stated that it was amending Bennett's bond to "$25,000 cash surety on each of these files." The judge further ordered Bennett remanded to the Oakland County Jail. Both Bennett and appellant apprised the trial court that any new cases were not committed while Bennett was on bond and appealed to maintain the prior bond conditions in light of his compliance.

Despite these statements, the trial court advised that it would see the parties at the next pretrial date, and it needed to "figure out what's going on with these because it's one charge after another, okay." Bennett began to speak, but the trial court interjected by stating, "I got a pile of cases, and you're picking up more. You're going to the jail, all right. I'll see you next time." Bennett mentioned that he had turned himself in, and he had not acquired new cases. Both Bennett and appellant told the trial court that he posted bond and never missed a court date. In response, the trial court stated, "All right, maybe he can stop committing new offenses." Appellant again advised that the offenses were not new, but occurred "in a row" and were being "processed one at a time." The hearing concluded without any additional commentary by the trial court.

On May 31, 2024, appellant filed an emergency motion to reinstate Bennett's bond. The motion alleged that Bennett attempted to tell the trial court that a case pending in district court was related to the cases currently pending. But upon learning that another charge was filed, the trial

court assumed that it was committed when Bennett was on bond. The trial court amended the bonds to $25,000 cash/surety for each case and ordered Bennett remanded to the jail. The trial court refused to address appellant and Bennett's contention that Bennett posted bond, was in full compliance with the conditions, and did not acquire new cases while on bond. Bennett was employed and lived with his minor child and the child's mother. He sought reinstatement of the original bonds to allow him to work and meet his family obligations.

On June 5, 2024, a hearing was held on the emergency motion to reinstate Bennett's original bond. Both appellant and Bennett appeared over Zoom. Appellant stated that, at the pretrial hearing a week earlier, the trial court was advised of an additional charge against Bennett. But, that charge arose from an incident on August 17, 2023. Appellant claimed that, before he could address the timing of the charge, the trial court revoked bond and ordered Bennett into custody. Appellant asserted that Bennett was not arrested until 2024 for offenses that primarily occurred in August 2023. Accordingly, Bennett's new cases did not involve recent criminal activity or violate his bond conditions.

The trial judge disagreed with appellant's assertion that she was unaware of the dates of Bennett's criminal activity. The court stated:

> The Court made it clear that it is - - regardless of when these charges are coming, the Court has - - let's see here - - we have six charges of uttering and publishing, a charge of false pretenses, one's a habitual four, and then while we're in court, the Court is notified - - which I appreciate [appellant's] due diligence to notify the Court that, Judge, just so you know, we're not doing anything on this today, there's yet another case coming up. . . . I simply don't have a crystal ball to make a determination as to when - - if there are other cases coming up to - - to - - to sit there and understand that Mr. Bennett has that many pending cases in front of the Court, and new cases are being bound over, then it's highly concerning to the Court because one of the things the Court does consider regarding bond and appropriateness of bond isn't just flight risk or appearing in court. The Court concedes that Mr. Bennett does appear to all his court proceedings. However, the - - the safety of the community is also something the Court has to consider. And even those [sic] these happened all in August of '23, the calendar - - it's not that long ago, all right. We're in June, so, you know, it's been six or seven months. It's not - - it would not be unusual for the Court to see someone who has a pattern of criminal activity continue to pursue criminal activity even while on bond. The Court doesn't find that it set an egregious bond here. The Court could certainly set something that the Court believes that it's something the Defendant could, being that he is [sic] pending so many charges, a 25,000 cash surety, (indiscernible) ten percent, the amendment to the bond regarding all those, the Court does not see that as something that the Defendant could not or should not be able to post. The Court just wants to insure [sic] that Mr. Bennett understands the seriousness of the fact that you have six files or five files, at least six or seven charges as a habitual four pending before this Court, that that is serious. And it sounds like there's probably a real likelihood of ultimate incarceration.

The trial court asked the prosecutor for her position. The prosecutor stated that there was a high likelihood of conviction. Additionally, she noted that Bennett's bond was not revoked, but adjusted, in light of the amount of criminal activity charged from 2023. The prosecutor opined that the trial court's imposition of the bond did not constitute an abuse of discretion.

In response, appellant stated that Bennett had full-time employment. This income would allow him to make restitution to the victims and to pay court costs. But, Bennett did not have the means to provide a $75,000 bond at one time. Essentially, Bennett was imprisoned because of his poverty. Appellant also opined that, in 42 years of practicing criminal law, he had the ability to assess the character of his clients. Appellant noted that Bennett had been exemplary toward the court and to his obligations since being allowed on bond. Appellant asked the trial court to reconsider its decision and reinstate the original bond or to permit 10% of the amended bond to allow Bennett to be a productive citizen. Appellant acknowledged that Bennett had no control over the prosecutor's decision to charge the cases individually instead of at one time. Bennett attempted to interject and address the court, but was rejected.

The trial court acknowledged that Bennett could decide to go to trial and perhaps be acquitted. Nonetheless the court remained concerned that Bennett had been charged with four different felonies and as a habitual offender. Consequently, the trial court determined that it had not abused its discretion when imposing the bond. Because the parties were anticipating a resolution, the trial court inquired about the date when it could be put on the record. Appellant advised that Bennett was scheduled to be arraigned on his additional case on the following Thursday. The trial court instructed the court clerk to place that arraignment and Bennett's three pending cases on the docket for that day, but was unsure of the date. The court clerk advised the date was June 13, 2024. The following occurred on the record:

*The Court*: June 13, okay, I'll see everyone then, thank you.

*The Clerk*: Thank you.

[*Appellant*]: Judge - - thank you. F****** c***.

(Court in recess at 10:21 a.m.)

On June 5, 2024, the trial court issued an order to show cause, which read:

This matter comes before the Court on the Court's own motion. The Court finds that [appellant - Marshall S. Tauber (P34547)] directed obscene language to the Court thereby engaging in a willful disregard of the authority of the Court.

**IT IS HEREBY ORDERED** that [appellant] is to appear on **WEDNESDAY, June 12, 2024, at 1:30 PM** at Oakland County Sixth Circuit Court, 1200 North Telegraph Road, Pontiac Michigan 48341 – Courtroom 1B, to show cause why he should not be found in direct criminal contempt of court for his conduct pursuant to MCL 600.1701(a). An arraignment on the charge and/or pretrial may be conducted in lieu of the hearing. Failure to appear for a contempt hearing may result in a bench warrant being issued for arrest.

-4-

On June 12, 2024, appellant's contempt proceeding occurred with his representation by counsel. At the start of the hearing, the trial court stated:

[T]he Court has set this for a contempt hearing. So, by way of background, this matter was originally set on a motion call last week on June 5. This was brought on - - [appellant] brought this on behalf of his client. It was based on an emergency motion that was filed with the court which was filed a day or two before the hearing date that was scheduled on June 5 where the Court accommodated [appellant] and his client so that they could appear on a ZOOM, virtual hearing. The Court does, obviously, want to hear emergency motions as soon as it, potentially, could being that the civil motions - - there's a presumption that those are heard pursuant to a virtual remote proceeding - - the Court treats the criminal motions the same. It does everything in its power in order to provide access to justice and when the Court sees a[n] immediate emergency motion, the Court does not take that lightly, and [appellant] on behalf of Mr. Bennett, was accommodated in that matter in order for him to be heard. The Court also goes on to insure [sic] that each party and litigant has a certain timeframe in which they are logging in. The Court does not appreciate or - - and wants to insure [sic] that people are not sitting in a ZOOM waiting room all morning. So the Court could have, you know, 30 plus motions on any motion call, sometimes as many as 60. Court staff will reach out to each individual lawyer and litigant a day before to tell them the timeframe that they need to log in where they are brought into the waiting room, seated in a waiting room until they're brought into the court hearing. . . .

The trial court then noted that it scheduled appellant's emergency motion over Zoom with Bennett's attendance occurring virtually from the jail. It permitted all parties to speak and did not rush the parties. Then, the trial court issued its decision regarding the emergency motion on the record in accordance with its viewpoint. The trial court advised of what transpired next:

While the Court is on the record with the Oakland County Jail still logged into the record, while the Court in its immediate sitting and view, [appellant] participated in willful disregard to the court's authority by rendering a gender-based slur to the Court, the word which does not - - it does not fairly roll off my tongue as easily as it does [appellant's] - - was, "f****** c***." That is, wow. Members of staff are also in the courtroom while Mr. Bennett, who the Court has gone back to review this video, appears himself to be in shock that the Court would be called such a thing.

And, so, here's what we - - here's what we come down - - this is what it comes down to. It comes down to that direct contempt of court is - - is requested or ordered to be punished summarily. However, the contempt rules, simply, have not caught up to our ZOOM technology because when someone participates in a contemptuous act against the Court, and then immediately logs off, there is no - - there is no possibility the Court could stop its entire proceeding, its entire docket of the morning, ask staff to stop doing what they're doing, call the contemptuous actor and say can you please get back on the phone or hope that the

-5-

contemptuous actor actually picks up the phone without a court order demanding that individual to be there.

So, unfortunately, the Court is left looking [at] a blank screen, and, frankly, by just saying to the blank screen, I am now going to hold such and such in direct contempt of court, without the person being held in direct contempt of court there, that could certainly rise to a level of an issue with due process.

So the Court is left with this situation where it has to set a hearing, personally serve [appellant] to be here, and then participate in a hearing that the Court, frankly, does not believe [appellant] deserves. There is no hearing necessary here. The Court heard what it heard. [Appellant] is aware of what he said. It is clearly on the record, all right. And so with that, the Court, immediately, at that time and at this moment finds [appellant] in direct contempt of court.

I'll move on to punishment, but I will, because we had to schedule this for this date, I will say for this record, so this record is clear, this situation is analogous to an individual opening the door while the Court is on the bench, opening this courtroom's door saying, "f****** c***," and running out. And if the deputies are unable to apprehend the person, and they leave the building, the Court would have no other choice but yet to personally serve or bench warrant that individual for them to reappear.

All right, so with all that said, [appellant] you are - - you're certainly found in direct contempt of court, but because I did schedule this for today, and you have counsel here, I'll hear anything that either one of you would like to say prior to punishment being given. Go ahead.

Appellant's counsel stated that she had not heard or saw what the court did. Therefore, she asked to see the video "before the Court issues a contempt proceeding." Counsel noted that the court issued an order to show cause, indicating that an arraignment or pretrial may be conducted in lieu of a hearing. Therefore, counsel wanted "to see the basis for this."

The trial court stated that it was a public record that counsel could request. And, the trial court expressly stated that "we're not having a hearing" because the contempt ruling was made. Rather, counsel could articulate on appellant's behalf before sentencing. Counsel then stated that appellant did not believe that he was still in the Zoom hearing with the court. The trial court questioned whether appellant was merely sorry that he got caught, to which appellant's counsel answered, "no." Appellant's counsel then indicated that sometimes things were said aloud without an intention that they be heard by anyone. Additionally, counsel indicated that appellant sent an e-mail to the court apologizing. The trial court acknowledged receipt of an e-mail from appellant wherein he explained that it was a hot day and he had another court date. The trial court noted that it accommodated appellant's emergency motion and allowed him to argue while seated in a car, an inappropriate location for a Zoom call. Despite the accommodation, the trial court stated that appellant made the offensive gender slur. Again, appellant's counsel offered that he never intended for the court to hear the comment.

Appellant's counsel next offered that appellant has been an attorney for more than 40 years, and there had never been a complaint about his behavior, his respect for the court, his diligence, or his competence. Counsel then stated, "He said what he said and there is no defense for the words chosen." Rather, it was explained that appellant said those words out of frustration to, he thought, himself. The court and appellant's counsel then had a discussion about other phrases or terms that attorneys may use in reference to judges, and whether they were gender-based. Appellant's counsel again acknowledged that the words appellant used were "horrid," and there was no intent for anyone else to hear them, including Bennett. Counsel attempted to offer that appellant was "technologically inept at Z[oom] from a car[.]" The trial court refused to listen to that argument, noting that Zoom proceedings had been used for four years because of the pandemic.

The trial court again noted that direct contempt of court occurred in its immediate view and presence, stating:

> The Court has indicated there's - - there's no[] hearing here (indiscernible). This is the only time I get to come face-to-face with [appellant] because he logged off the ZOOM hearing, all right. It would be - - I would have no other ability but to schedule a hearing to have [appellant] appear to face the repercussions of his actions[.] . . . He can't un-ring that the Court heard it. He can't un-ring that that's something that he said to the Court which is now on a public record heard by his client at the Oakland County Jail, heard by deputies at the Oakland County Jail, heard in this Court's immediate view and presence, a willful disregard for the authority of the Court, and that's why we're here. . . .
>
> So calling a Judge a derogatory term, a gender-based slur, while she's serving as a Judge, can have severe, detrimental effect. This action not only constitutes contempt of court, potentially, resulting in fines or imprisonment, but it also undermines the ability and integrity of the judicial system. Such disrespectful, uncivilized behavior erodes public confidence in the legal process. . . .
>
> It's jarring how brazen and comfortable [appellant] felt calling any woman, alone a Judge, a despicable and demeaning slur, and it's surely unbecoming of any lawyer. And I simply cannot imagine any situation that would warrant such language.

At the conclusion of the hearing, the trial court held appellant in direct criminal contempt of court, and fined him $7,500, to be paid by June 14, 2024 at 4:30 p.m. The trial court recommended that appellant consider taking courses addressing diversity or civility. Appellant now challenges the trial court's criminal contempt conviction.

## II. DUE PROCESS OF LAW

Appellant contends that the trial court deprived him of due process of law by failing to allow an adjournment to review the video recording, failing to address the contempt as indirect and to hold a hearing, failing to provide notice and an opportunity to be heard, and failing to refer the contempt proceeding to a different judge. We disagree.

To preserve an issue for appellate review, an objection must be raised in the trial court and the same basis for the objection must be claimed on appeal. See *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). When a defendant fails to raise a constitutional challenge during the trial court proceedings, the issues are unpreserved. *People v Morris*, 314 Mich App 399, 403-404; 886 NW2d 910 (2016). The unpreserved issues are reviewed for plain error affecting substantial rights. *Id.* at 404. The plain error standard also applies to unpreserved nonconstitutional issues. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007).

We conclude that these claims are not preserved for appellate review. Although appellant's counsel did request to see the video, she did not ask for an adjournment to review the video. Moreover, parties can order or request to see hearings through the circuit court's website.[1] Additionally, in the trial court, appellant did not raise a due process challenge, contest that an indirect contempt proceeding was at issue, challenge the notice and opportunity to be heard, and claim that the contempt proceeding had to be held before a different judge. Thus, the plain error standard applies.

To establish plain error requiring reversal, a defendant must show that "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Plain error affecting substantial rights requires a showing of prejudice, specifically that the error affected the outcome of the lower court proceedings. *Id.* Once a defendant demonstrates the three requirements for plain error, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (quotation marks and citation omitted).

Although appellant claims that he was deprived of due process of law, he failed to demonstrate plain error affecting his substantial rights. Accordingly, appellant is not entitled to appellate relief from his criminal contempt conviction.

MCL 600.1701 governs the courts' power to address neglect or misconduct, including contempt, and pertinently states:

> The supreme court, circuit court, and all other courts of record, have power to punish by fine or imprisonment, or both, persons guilty of any neglect or violation of duty or misconduct in all of the following cases:

> (a) Disorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority.

---

[1] In appellant's brief on appeal, it states that the video recording of the hearing was not provided, and a court order was necessary to secure it. Appellant fails to explain why this video record was not available through traditional channels.

* * *

> (g) Parties to actions, attorneys, counselors, and all other persons for disobeying any lawful order, decree, or process of the court. [MCL 600.1701(a), (g).]

MCL 600.1711 addresses the type of contempt and punishment, stating:

> (1) When any contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both.

> (2) When any contempt is committed other than in the immediate view and presence of the court, the court may punish it by fine or imprisonment, or both, after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend.

Punishment for contempt may be a fine of not more than $7,500 or imprisonment not to exceed 93 days or both. MCL 600.1715(1).

> "The power to hold a party, attorney, or other person in contempt is the ultimate sanction the trial court has within its arsenal[.]" *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 708; 624 NW2d 443 (2000).

> [W]e define[] contempt of court as a willful act, omission, or statement that tends to . . . impede the functioning of a court. . . . [T]he primary purpose of the contempt power is to preserve the effectiveness and sustain the power of the courts. Because the power to hold a party in contempt is so great, it carries with it the equally great responsibility to apply it judiciously and only when the contempt is clearly and unequivocally shown. [*Id*. (quotation marks and citations omitted).]

"The elements necessary to support a conviction of criminal contempt are (1) a wil[l]ful disregard or disobedience of the order of the court, and (2) that the contempt is clearly and unequivocally shown." *People v MacLean*, 168 Mich App 577, 579; 425 NW2d 185 (1988). "A wil[l]ful disregard consists of an act, omission, or statement tending to impair the authority or impede the functioning of the court." *Id*. Criminal contempt must be proven beyond a reasonable doubt. *DeGeorge v Warheit*, 276 Mich App 587, 592; 741 NW2d 384 (2007). "A defendant charged with contempt is entitled to be informed of the nature of the charge against him or her and to be given adequate opportunity to prepare a defense and to secure the assistance of counsel." *Id*. An individual cannot claim a lack of notice of the nature of and preparation for a contempt proceeding when that contention is belied by the documents the individual has filed in the case. *Id*. at 592-593.

This case involves the interpretation of MCL 600.1711, and the rules of statutory construction apply:

> Issues involving statutory interpretation present questions of law that are reviewed de novo. The primary goal of statutory interpretation is to give effect to the intent of the Legislature. The most reliable evidence of legislative intent is the plain

language of the statute. If the language of the statute is clear and unambiguous, it is presumed that the Legislature intended the meaning plainly expressed in the statute. The court's interpretation of a statute must give effect to every word, phrase, and clause. Further, an interpretation that would render any part of the statute surplusage or nugatory must be avoided. Common words and phrases are given their plain meaning as determined by the context in which the words are used, and a dictionary may be consulted to ascertain the meaning of an undefined word or phrase. [*Le Gassick v Univ of Mich Regents*, 330 Mich App 487, 495; 948 NW2d 452 (2019) (quotation marks and citations omitted).]

As noted, MCL 600.1711(1) states that "[w]hen any contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both."

To have a valid summary conviction, "due process requires that the salient facts constituting the contempt be within the personal knowledge of the judge." *In re Scott*, 342 Mich 614, 618; 71 NW2d 71 (1955). The plain language of MCL 600.1711(1) allows the trial court to punish "any" contempt committed "in the immediate view and presence of the court." In *Scott*, 342 Mich at 618-619, our Supreme Court examined the meaning of the phrase "in the presence of the court" as:

"The immediate view and presence does not extend beyond the range of vision of the judge, and the term applies only to such contempts as are committed in the face of the court. Of such contempts, he may take cognizance of his own knowledge, and may proceed to punish summarily such contempts basing his action entirely upon his own knowledge. All other alleged contempts depend solely upon evidence, and are inferences from fact, and the foundation for the proceedings to punish therefore must be laid by affidavit." [*Id*. quoting *In re Wood*, 82 Mich 75, 82 (1890).]

"Where the contempt is committed directly under the eye or within the view of the court, it may proceed upon its own knowledge of the facts and punish the offender, without further proof, and without issue or trial in any form[.]" *Scott*, 342 Mich at 620. If essential elements of the offense are not within the personal observations of the judge but are contingent upon statements made by others, due process requires the accused receive notice and a fair hearing. *Id*. at 621.

We conclude that appellant's conduct during the court's Zoom hearing satisfied the "immediate view and presence" requirement of MCL 600.1711(1)'s plain language. The trial court conducted a hearing addressing Bennett's emergency motion to reinstate the prior bond and allowed appellant and Bennett to attend over Zoom. Although appellant was able to establish that Bennett's additional charges were not committed while he was released on bond, the trial court nonetheless denied the motion, concluding that its amendment to the bond terms did not constitute an abuse of discretion. The trial court then ordered all cases scheduled for resolution the following week. After the court clerk announced the date, the transcript reflects that appellant stated, "f****** c***." The contempt occurred "in the immediate view and presence of the court." MCL 600.1711(1). That is, it was before the eye, view, or "face" of the court. *Scott*, 342 Mich at 620.

The fact that the trial court conducted the hearing over Zoom instead of physically in the courtroom does not preclude a finding that misconduct or insolent behavior by an attorney constitutes contempt when it nonetheless occurs over video in the immediate view and presence of the court. After the pandemic started, the State Court Administrative Office created the Michigan Trial Courts Virtual Courtroom Standards and Guidelines. These guidelines state that "[p]roceedings conducted via videoconferencing technology must be recorded by the court, except for those hearings that are not required to be recorded, such as small claims proceedings or informal traffic hearings. The required recording must be sufficient to produce a verbatim written transcript as if the hearing were held in person in the courtroom." See Guidelines, Section A.2 Virtual Hearings Standard. These guidelines also provide that "[t]he judge is responsible for maintaining order and decorum just as they do in the physical courtroom." *Id.* at Section D.1. Making a Clear Record.

Appellant contends that he was deprived of due process of law. "With regard to criminal statutes, procedural due process is generally satisfied by providing a defendant with reasonable notice of the charge against him or her and an opportunity to be heard and present a defense." *People v Mysliwiec*, 315 Mich App 414, 420; 890 NW2d 691 (2016). In the present case, the trial court held a hearing on the emergency motion to reinstate Bennett's bond. At the conclusion of the hearing, appellant directed a gender-based slur at the trial judge. This statement occurred in the immediate view and presence of the trial court because it was conducting a Zoom hearing and heard the statement which was also transcribed in the record. Despite the occurrence of the contemptuous act before the trial court, the trial court issued an order to show cause. Although this order indicated that appellant was held in contempt of court for his conduct, the order further indicated that a hearing would be held. Indeed, appellant was given nearly a week to obtain counsel and prepare for a hearing. More importantly, appellant sent the trial court an e-mail apologizing for his statement and attributing it to his schedule and the hot weather. Appellant cannot claim a lack of notice when the assertion is belied by the documents that were filed in the case. That is, the order to show cause issued by the trial court did not identify the "obscene language" that was stated. Nonetheless, appellant sent the trial court an apology e-mail and apparently did not attempt to attribute it as a reference to someone or something else.

It should also be noted that appellant contends that the contempt did not occur in the immediate presence and view of the court because appellant's screen went black before he made the statement, leading him to conclude that the hearing had disconnected. But appellant did not file the video recording of the hearing, only a transcript. Appellant had the duty to file the full, complete record on appeal, and this Court will not consider record evidence for which there is no evidentiary support. *Band v Livonia Assoc*, 176 Mich App 95, 103-104; 439 NW2d 285 (1989). In any event, the purpose of the immediate view and presence of the court requirement is that the evidence to support the summary contempt is within the court's personal knowledge and other witness testimony is unnecessary. Even if the video function froze or went black, the trial court was in the midst of completing the hearing. There is no indication that the speaker of the gender-based slur was unclear, and appellant later sent an apology e-mail to the court. This argument does not excuse or preclude a finding of criminal contempt.

Finally, appellant contends that the trial court did not "summarily" address direct criminal contempt because it scheduled a hearing for a week later. However, the dictionary defines "summary" as "done without delay or formality: quickly executed", and "summarily" is the adverb

-11-

form of "summary." Merriam-Webster's Dictionary, 11th edition. As noted, the plain language of MCL 600.1711 reads:

> (1) When any contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both.

The trial court explained that direct contempt occurred in its presence during the Zoom hearing. Because appellant then disconnected from the hearing, it issued an order to show cause that identified the contemptuous conduct and afforded appellant time to secure counsel and prepare any response or defense prior to the imposition of punishment. The plain language of MCL 600.1711 uses the term "summarily" and it does not require "immediate" imposition of the fine or imprisonment.[2] Under the circumstances, appellant failed to demonstrate plain error affecting his substantial rights arising from the trial court's determination that his conduct constituted criminal contempt, the timing of that conclusion and the punishment, and the due process afforded him to prepare and present a defense.

## III. SUFFICIENCY OF THE EVIDENCE

Appellant contends that there was insufficient evidence to support the criminal contempt conviction. We disagree.

"The issuance of an order of contempt rests in the sound discretion of the trial court and is reviewed only for an abuse of discretion." *In re Contempt of Henry*, 282 Mich App 656, 671; 765 NW2d 44 (2009). A trial court's decision to hold a party or individual in contempt is also reviewed for an abuse of discretion. *In re Dudzinski*, 257 Mich App 96, 99; 667 NW2d 68 (2003). An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes.

---

[2] In *Sacher v United States*, 343 US 1, 9; 72 S Ct 451; 96 L Ed 717 (1952), the United State Supreme Court examined the use of the term "summary" as applied to the equivalent federal contempt court rule of procedure, Fed R Civ P 42(b). It determined that "summary" "does not refer to the timing of the action with reference to the offense but refers to a procedure which dispenses with the formality, delay and digression that would result from the issuance of process, service of complaint and answer, holding hearings, taking evidence, listening to arguments, awaiting briefs, submission of findings, and all that goes with a conventional court trial. The purpose of that procedure is to inform the court of events not within its own knowledge. The Rule allows summary procedure only as to offenses within the knowledge of the judge because they occurred in his presence." Indeed, because appellant had disconnected from the Zoom hearing, the trial court issued its show cause order containing the finding that appellant committed criminal contempt. Nonetheless, the trial court's show cause order also scheduled a hearing to determine the appropriate punishment and to reacquire appellant's presence before the court. At this hearing, appellant was given the opportunity to be heard. In light of *Sacher*, we do not review this one-week delay as converting a direct summary proceeding to an indirect, nonsummary proceeding, see MCL 600.1711(2) (addressing contempt that does not occur in the immediate view and presence of the court and requiring proofs and an opportunity to defend).

*ARM v KJL*, 342 Mich App 283, 293; 995 NW2d 361 (2022) (quotation marks and citation omitted).

In *People v Baskerville*, 333 Mich App 276, 282-283; 963 NW2d 620 (2020), this Court addressed challenges to the sufficiency of the evidence:

> We review de novo a challenge to the sufficiency of the evidence. When ascertaining whether sufficient evidence was presented at trial to support a conviction, we must "review[] the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. All conflicting evidence, and any reasonable inferences that may be drawn from that evidence, must be resolved in favor of the prosecution. [Citations omitted.]

"The elements necessary to support a conviction of criminal contempt are (1) a wil[l]ful disregard or disobedience of the order of the court, and (2) that the contempt is clearly and unequivocally shown." *MacLean*, 168 Mich App at 579. "A wil[l]ful disregard consists of an act, omission, or statement tending to impair the authority or impede the functioning of the court." *Id*. Criminal contempt must be proven beyond a reasonable doubt. *DeGeorge*, 276 Mich App at 592. "A defendant charged with contempt is entitled to be informed of the nature of the charge against him or her and to be given adequate opportunity to prepare a defense and to secure the assistance of counsel." *Id*. An individual cannot claim a lack of notice of the nature of and preparation for a contempt proceeding when that contention is belied by the documents the individual has filed in the case. *Id*. at 592-593.

Appellant seems to indicate that his actions were not "willful" because he spoke out of frustration and did not intend for anyone to hear his statement. But, the term "willful" for purposes of criminal contempt does not require such an intention. Rather, the willful disregard consists of a statement that tends to impair the court's authority or impedes its functioning. *MacLean*, 168 Mich App at 579. Appellant did not make his comment in the judge's chambers during a heated exchange and then immediately apologize. Instead, appellant was on a Zoom hearing with Bennett, his client, and when he did not obtain the relief requested he cursed at the trial judge. Disagreement with a court's ruling may be addressed through reconsideration motions or the appeal process. Demeaning or belittling the trial court, particularly in front of a client, erodes the public's confidence in the judicial system.

As discussed in Issue I, appellant's claim that his statement did not occur in the immediate presence and view of the court because of technical difficulties is without merit. First, appellant failed to produce the video recording to reflect that such technical difficulties occurred. Moreover, even if appellant was unable to view the trial court, the trial court found that the contempt occurred

in its immediate view and presence. Indeed, the audio of the proceeding continued, the trial court noted that Bennett and the jail staff heard appellant's inappropriate statement, and the statement was transcribed into the record. Viewing the evidence in the light most favorable to the trial court's factual findings, there was sufficient evidence to support appellant's criminal contempt.

Affirmed.

/s/ Anica Letica
/s/ Michelle M. Rick
/s/ Mariam S. Bazzi